# TEXAS AND PACIFIC RAILWAY COMPANY *v.* CODY.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 246. Argued and submitted March 29, 1897. — Decided April 19, 1897.

The plaintiff in his declaration described himself as a resident in Texas, and the defendant as a railway company created and existing under the laws of Texas. The railway company was in fact a corporation organized under and by virtue of acts of Congress, and in a petition for the removal of the action from a state court of Texas to the Federal court, set that forth as a ground for removal, and the petition was granted, and the case was removed to the Circuit Court of the United States, and tried and decided there. *Held*, that the Circuit Court properly entertained jurisdiction.

In an action against a railroad company to recover damages for injuries received by a person travelling on a highway, by a collision at a crossing of the railroad by the highway at grade, an instruction to the jury that the obligations, rights and duties of railroads and travellers upon highways crossing them are mutual and reciprocal, and that no greater care is re-

quired of the one than of the other is substantially correct. *Continental Improvement Co.* v. *Stead*, 95 U. S. 161, followed.

The instructions as to damages were not incorrect. If the company desired particular instructions, it should have asked for them.

THIS was an action commenced by Henry D. Cody against the Texas and Pacific Railway Company in the District Court of Tarrant County, Texas, and removed by defendant to the Circuit Court of the United States for the Northern District of Texas.

. Plaintiff alleged in his petition that on March 4, 1892, he was injured at the crossing of the track of the defendant company over Jennings Avenue in the city of Fort Worth, Texas, by the carelessness and negligence of the defendant and its agents and servants. Defendant demurred generally and pleaded the general issue, and, in special pleas, alleged the contributory negligence of plaintiff and his failure to exercise due care under the circumstances. The issues were submitted to a jury, which found a verdict in favor of plaintiff for the sum of $7500, on which judgment was rendered. The case was taken to the Circuit Court of Appeals for the Fifth Circuit and the judgment affirmed, 30 U. S. App. 183, whereupon it was brought to this court by writ of error.

*Mr. David D. Duncan* for plaintiff in error. *Mr. John F. Dillon* and *Mr. Winslow F. Pierce* were on his brief.

*Mr. Ernest B. Kruttschmitt, Mr. Edgar H. Farrar, Mr. Benjamin F. Jonas, Mr. Hewes T. Gurley* and *Mr. Thomas F. West,* for defendant in error, submitted on their brief.

MR. CHIEF JUSTICE FULLER, after stating the case as above, delivered the opinion of the court.

The railway company raises a preliminary question of jurisdiction. Plaintiff below described himself in his petition as a resident of Tarrant County, Texas, and alleged the Texas and Pacific Railway Company to be " a private corporation, created and existing under the laws of the State of Texas," and that " the defendant owns and operates a line of railway

extending into and running through said Tarrant County, and into and through the city of Fort Worth, Tarrant County, Texas, and has for the purpose of conducting and carrying on its business in the management and operation of said line of railway an office and agency, and an agent and representative, in the city of Fort Worth, in said Tarrant County, upon whom citation may be served in this case, the name of the said agent being J. T. Clements."

The defendant company filed its petition for removal in due time, which, in addition to other necessary averments, stated " that at the commencement of this suit plaintiff was then and still is a citizen and resident of the State of Texas, and that your petitioner was then and still is a corporation organized under and by virtue of certain acts of Congress of the United States, to wit : an act entitled ' An act to incorporate the Texas and Pacific Railway Company and to aid in the construction of its road and other purposes,' approved March 3, 1871 ; and an act supplementary thereto approved March 2, 1872 ; and that this is a suit arising under the laws of the United States within the meaning of the 2d section of an act of March 3, 1875, as amended by the acts of March 3, 1887, and August 13, 1888."

Bond was tendered and approved and the case removed accordingly. There is no controversy over the fact that the defendant corporation owed its existence to acts of Congress, and was entitled to remove the cause as one arising under the laws of the United States in accordance with the decision of this court in *Pacific Railroad Removal cases*, 115 U. S. 1; but the railway company expresses apprehension lest we may hold that jurisdiction was not maintainable within the rule laid down in *Tennessee* v. *Union & Planters' Bank*, 152 U. S. 454, and other cases, because plaintiff below did not allege that defendant was a Federal corporation, but rather the contrary.

The rule thus referred to, and reiterated in *Chappell* v. *Waterworth*, 155 U. S. 102; *Postal Tel. Cable Co.* v. *Alabama*, 155 U. S. 482; and *Oregon Short Line &c. Railway* v. *Skottowe*, 162 U. S. 490, is that under the acts of March 3, 1887, c. 373, and August 13, 1888, c. 866, a case not depending on the citi-

zenship of the parties, nor otherwise specially provided for, cannot be removed from a state court into the Circuit Court of the United States, as one arising under the Constitution, laws or treaties of the United States, unless that appears by the plaintiff's statement of his own claim ; and that, if it does not so appear, the want cannot be supplied by any statement in the petition for removal or in the subsequent pleadings.

By the acts of Congress of 1887 and 1888, the jurisdiction of the Circuit Court on removal by defendant (and defendants alone can remove) is limited to such suits as might have been originally brought in that court; and it is essential if the jurisdiction is invoked on the ground that the cause of action arises under the Constitution, laws or treaties of the United States that this should be asserted. If recovery directly depends upon a right claimed under the Constitution, laws or treaties, plaintiff's statement of his case must necessarily disclose the fact, and if the action is brought in the state court, defendant can remove it. If, however, plaintiff asserts no such right, and defendant puts his defence on the possession of such right, or its denial to plaintiff, though essential to his recovery, then defendant is remitted to his writ of error from this court to the state court to test the Federal questions thus raised.

It is obvious that in the instance of diverse citizenship a different question is presented. Plaintiff may run his own risk in respect of the cause of action on which he proceeds, but he cannot cut off defendant's constitutional right as a citizen of a different State than the plaintiff, to choose a Federal forum, by omitting to aver, or mistakenly, or falsely, stating, the citizenship of the parties.

And this must be so also as to Federal railroad corporations. It was held in the *Pacific Railroad Removal cases* that as all the faculties and capacities possessed by such corporations were derived from their acts of incorporation by Congress, all their doings arose out of those laws, and, therefore, suits by and against them were "suits arising under the laws of the United States." Conceding this, the principle applicable to diverse citizenship may reasonably be applied to them.

If in this case plaintiff had simply described defendant by its name, without more, there would seem to be no question that, as the corporation was judicially known to be a Federal corporation, defendant would be entitled to remove the case on proper allegations in its petition; and we think this necessarily follows, where, by some mistake, or otherwise, the defendant is erroneously stated to be created under state laws. Here defendant was described as "a private corporation, created and existing under the laws of the State of Texas," and this was repeated in an amended petition, filed in the Circuit Court; but no motion to remand was made, nor was the propriety of the removal questioned in any way. Possibly the pleader did not intend to deny the Federal character of the company, but whether so or not, no issue was or could be made as to the source of its corporate existence.

*Oregon Short Line &c. Railway* v. *Skottowe*, 162 U. S. 490, is in harmony with these views. That was an action brought in a court of the State of Oregon to recover for personal injuries alleged to have been caused, in Oregon, by the negligence of the defendant company. A petition for removal was filed and denied, and this denial was approved by the Supreme Court of Oregon. Defendant was described in the complaint as "a corporation duly organized, existing and doing business in the State of Oregon." In the removal petition the defendant was alleged to be a consolidated company, composed of several railway corporations severally organized and created under the laws of the Territories of Utah and Wyoming and of the State of Nevada, and under an act of Congress, approved August 2, 1882, c. 372, 22 Stat. 185, entitled "An act creating the Oregon Short Line Railway Company, a corporation in the Territories of Utah, Idaho and Wyoming, and for other purposes"; and an act of Congress, approved June 20, 1878, c. 352, 20 Stat. 241, making the Utah and Northern Railway Company a railway corporation in the Territories of Utah, Idaho and Montana.

This court held that, so far as appeared, the defendant company existed and was doing business in the State of Oregon solely under the authority of that State, whether express

or permissive; that the acts of Congress referred to did not disclose any intention on the part of Congress to confer powers or rights to be exercised outside of the Territories named therein, and that the Supreme Court of Oregon committed no error in affirming the action of the trial court denying the petition for removal.

We are of opinion that the Circuit Court properly entertained jurisdiction.

Turning to the case on the merits, we find no reason for disturbing the judgment of the Circuit Court of Appeals. Fourteen errors were assigned in that court to the judgment of the Circuit Court, which were reduced to six in this court, of which the first was merely that the Court of Appeals erred in affirming the judgment. The five specific grounds of error assigned are that the Circuit Court erred in refusing to give each of the following instructions asked for by defendant:

"1. The defendant asks the court to instruct the jury to return a verdict in this case for the defendant."

"3. You are instructed that it was the duty of plaintiff upon approaching the railroad track on Jennings Avenue crossing, if he was hurt on said crossing, to stop and look and listen for the approach of the train on the track before attempting to pass over said crossing, and if you believe from the evidence that he failed to stop and look and listen and that in consequence of such failure he was injured, you will find for defendant, even though you should believe from the evidence that the defendant was negligent either in respect to not furnishing a light at said crossing or in respect to not giving signals of the approach of the train or was negligent in respect to both of such matters."

"7. You are instructed that the rights of the railway company and of the public are not equal, but that the right of the company is superior to the right of the travelling public on all parts of its track, even at crossings."

And that there was error in that portion of the charge relating to the right of a person crossing a railroad track to expect the railroad company to give the signals required by law; and in that relating to the damages.

There was evidence tending to show that on March 4, 1892, on a very dark night, plaintiff was walking along Jennings Avenue, in Fort Worth, and towards the track of defendant, which he approached from the south and which crossed Jefferson Avenue at right angles; that as he approached he slackened his pace, walked slowly, listened, looked and saw and heard no train; that there was no light on the crossing, no bell ringing, no blowing of a whistle and no light indicating the approach of a train; and that, as he passed over the track, he was struck by a train backing over the crossing, knocked down and severely injured. The evidence was conflicting on the questions of negligence and contributory negligence, and the Circuit Court did not err in refusing to peremptorily instruct the jury in defendant's favor.

So far as the refusal of defendant's instructions, numbered "3" and "7" is concerned, the charge must be considered as a whole, as however correct either of them might be, the court was not obliged to use the language of counsel, and if the jury were otherwise properly advised on these points that was sufficient.

And this observation is applicable also to the exception to the reference to the giving of signals. That cannot be passed on as an isolated proposition.

After giving certain instructions requested by defendant, the court instructed the jury as follows:

"In this case the jury are instructed that plaintiff sues the defendant for the sum of $10,000, which he says he is entitled to by reason of injuries inflicted on him by defendant company in crushing his leg and causing its amputation, by serious injuries to his head, and by the bodily and mental pain incident and resulting from said injuries, as also from his diminished capacity to earn a living. He also alleges that he has incurred liabilities for nursing, lodging, attention and physician, in the sum of $700.

"2d. If you believe from the evidence that plaintiff was injured on defendant's track east of Jennings Avenue, then you will find for the defendant.

"3d. If, however, the jury find from the evidence that the

plaintiff was injured by the defendant on its track on the cross-ing of Jennings Avenue in Fort Worth, then you are instructed that the statutes of the State of Texas provide ' that each loco-motive engine shall have on it a bell or a steam whistle, and that the bell shall be rung or the whistle blown at the distance of at least eighty rods from the place where the railroad shall cross any road or street, and to be kept ringing or blowing until it shall have crossed such road or street or stopped.'

"4th. The plaintiff, if he was injured on Jennings Avenue while attempting to cross defendant's track, was required to use due care himself to avoid danger. The care which a per-son who crosses a railroad track on a street in a city is required to use is a question of fact for the jury. It varies with the surrounding circumstances. Such person is required to use due care to avoid danger; should he not do so, and his own negligence is the proximate cause of his injuries, he cannot recover, although the railroad company may not have given the signals which the law requires to indicate the approach of the train.

"5th. Should you believe from the evidence that the plain-tiff knew, or by the use of reasonable diligence might have known, of the approach of defendant's train, and thereby have avoided the danger, then you will find for the defendant.

"6th. If, on the other hand, you believe from the evidence that the plaintiff's negligence was not the proximate cause of his injuries and that plaintiff, without fault on his part, was injured by defendant at Jennings Avenue crossing through want of proper care on the part of the defendant, then you will find for plaintiff, in any sum not to exceed $10,000.

"A person attempting to cross a railroad track has the right to expect that the railroad will give the signals required by law, and if he is without fault and such neglect on the part of the road results in his injury, then he can recover.

"7th. The degree of care that was proper care on the part of the plaintiff and defendant must fit and grow out of the time, the occasion and circumstances. If the night was dark and misty and no arc light or other light lit up the crossing at Jennings Avenue, then to the extent that such facts, if at all,

increased the danger at the crossing of Jennings Avenue, then to that extent was greater care and prudence required of both plaintiff and defendant at said crossing.

"8th. The care to be exercised is such as an ordinary prudent man would exercise under similar circumstances. This is the true rule whether applied to the alleged negligence of the railroad company or the alleged contributory negligence of the plaintiff, and what is due care under a given state of facts must be determined by the jury by applying the rule as to what in their judgment a man of ordinary prudence would have done under the circumstances shown by the evidence.

"9th. If plaintiff was injured at the crossing of Jennings Avenue over defendant's track and his failure to use the care that a person of ordinary prudence would have used under the circumstances was the proximate cause of his injuries then he cannot recover although defendant may have also been guilty of negligence in the matter of failing to ring the bell on the engine or in some other matter."

We think that this gave the law to the jury with substantial correctness and fully covered all that the company had the right to demand.

The Circuit Court applied the settled rule as expounded by Mr. Justice Bradley in *Continental Improvement Company* v. *Stead*, 95 U. S. 161. That was the case of a collision of a special railroad train with a wagon. There was evidence tending to show that the plaintiff, who was driving the wagon, looked to the southward, from which direction the next regular train was to come, and did not look northwardly from which this train came; that his wagon produced much noise as it moved over the frozen ground; that his hearing was somewhat impaired; and that he did not stop before attempting to cross the track. The evidence was conflicting as to whether the customary and proper signals were given by those in charge of the locomotive, and as to the rate of speed at which the train was running at the time. The counsel for the railroad company requested the court to give certain specific instructions, to the general effect that

the plaintiff should have looked out for the train, and was chargeable with negligence in not having done so; and that it is the duty of those crossing a railroad to listen and look both ways along the railroad before going on it, and to ascertain whether a train is approaching or not. The trial judge refused to adopt the instructions framed by counsel, and charged that both parties were bound to exercise such care as under ordinary circumstances would avoid danger; such care as men of common prudence and intelligence would ordinarily use under like circumstances; that the amount of care required depended upon the risk of danger; and explained the circumstances which bore on that question. He charged, in short, that the obligations, rights and duties of railroads and travellers upon highways crossing them are mutual and reciprocal, and no greater degree of care is required of the one than of the other.

Mr. Justice Bradley said: "If a railroad crosses a common road on the same level, those travelling on either have a legal right to pass over the point of crossing, and to require due care on the part of those travelling on the other, to avoid a collision. Of course, these mutual rights have respect to other relative rights subsisting between the parties. From the character and momentum of a railroad train, and the requirements of public travel by means thereof, it cannot be expected that it shall stop and give precedence to an approaching wagon to make the crossing first; it is the duty of the wagon to wait for the train. The train has the preference and right of way. But it is bound to give due warning of its approach, so that the wagon may stop and allow it to pass, and to use every exertion to stop if the wagon is inevitably in the way. Such warning must be reasonable and timely. But what is reasonable and timely warning may depend on many circumstances. . . . On the other hand, those who are crossing a railroad track are bound to exercise ordinary care and diligence to ascertain whether a train is approaching. . . . We think the judge was perfectly right, therefore, in holding that the obligations, rights and duties of railroads and travellers upon intersecting highways

are mutual and reciprocal, and that no greater degree of care is required of the one than of the other. For, conceding that the railway train has the right of precedence in crossing, the parties are still on equal terms as to the exercise of care and diligence in regard to their relative duties. The right of precedence referred to does not impose upon the wagon the whole duty of avoiding a collision. It is accompanied with, and conditioned upon, the duty of the train to give due and timely warning of approach. The duty of the wagon to yield precedence is based upon this condition. Both parties are charged with a mutual duty of keeping a careful lookout for danger; and the degree of diligence to be exercised on either side is such as a prudent man would exercise under the circumstances of the case in endeavoring fairly to perform his duty. . . . The mistake of the defendant's counsel consists in seeking to impose upon the wagon too exclusively the duty of avoiding collision, and to relieve the train too entirely from responsibility in the matter. Railway companies cannot expect this immunity so long as their tracks cross the highways of the country upon the same level. The people have the same right to travel on the ordinary highways as the railway companies have to run trains on the railroads."

The case was reaffirmed, quoted from and followed in *Baltimore & Ohio Railroad Company* v. *Griffith*, 159 U. S. 603.

Tested by these principles, the Circuit Court did not err in the matters complained of.

Nor was there error in respect of the question of damages. What the trial judge said on that subject, taken together, was not incorrect, and if the railway company had desired particular instructions in reference to the measure of damages, it should have requested them, which it did not do. *Texas & Pacific Railway* v. *Volk*, 151 U. S. 73.

*Judgment affirmed.*