**AMERICAN BANK & TRUST CO. et al. v. FEDERAL RESERVE BANK OF ATLANTA, GA., et al.**

(Circuit Court of Appeals, Fifth Circuit. November 19, 1920.)

No. 3552.

1. **Removal of causes** ⊙⇒27—**Suit against federal reserve bank removable; "national banking association."**

Federal reserve banks, which do not serve the public generally and locally are not "national banking associations," within Judicial Code, § 24(16), being Comp. St. § 991(16), which makes such associations citizens of the state where located for general purposes of jurisdiction of the federal courts, and a federal reserve bank may remove a suit on the

ground that it is a national corporation and that the suit is one arising under the laws of the United States.

**2. Removal of causes ⊂⊃19(1)—Suit based on alleged ultra vires acts of federal reserve bank removable.**

·A suit against a federal reserve bank to restrain it from pursuing a method of doing business as beyond the powers conferred by its charter and involving a construction of the act creating such banks, *held* removable as one arising under the laws of the United States.

**3. Banks and banking ⊂⊃283½, New, vol. 11A Key-No. Series—Method of collecting checks by federal reserve bank.**

The provision of Federal Reserve Act Dec. 23, 1913, § 13(1), being Comp. St. § 9796(1), that no charge for remission of proceeds of checks shall be made against federal reserve banks, does not prohibit such banks from receiving from member and depositing banks checks drawn on nonmember banks, nor limit them to the customary method of collecting such checks by transmitting them to the drawee bank for remission of the amount, where by custom the drawee bank charges exchange on the remittance, and to avoid such charge and to aid in the purpose of the act to establish a par clearance system, a reserve bank may lawfully cause such checks to be presented for payment over the counter of the drawee bank.

**4. Banks and banking ⊂⊃283½, New, vol. 11A Key-No. Series—Bill charging conspiracy by federal reserve bank and officers insufficient.**

A bill by state banks, not members of the federal reserve system, against the federal reserve bank of the district and its officers, complaining of the method of such bank in collecting checks drawn on complainant banks, *held* not to state a cause of action for equitable relief on the ground of conspiracy to oppress and coerce complainants.

Appeal from the District Court of the United States for the Northern District of Georgia; Beverly D. Evans, Judge.

Suit in equity by the American Bank & Trust Company and others against the Federal Reserve Bank of Atlanta, Ga., and others. Decree for defendants, and complainants appeal. Affirmed.

Alex W. Smith, of Atlanta, Ga., William H. Watkins, of Jackson, Miss., Orville A. Park, of Macon, Ga., T. M. Stevens, of Mobile, Ala., M. M. Baldwin, of Birmingham, Ala., Smith, Hammond & Smith, of Atlanta, Ga., Stevens, McCorvey & McLeod, of Mobile, Ala., Tillman, Bradley & Morrow, of Birmingham, Ala., and Watkins & Watkins, of Jackson, Miss., for appellants.

Hollins N. Randolph and Robert S. Parker, both of Atlanta, Ga., for appellees.

Before WALKER and BRYAN, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge. This is an appeal from a decree in equity of the District Court of the United States for the Northern District of Georgia, dismissing the bill or petition for want of equity. The suit was originally brought in the superior court of Fulton county, Ga., and was removed to the District Court of the United States for the Northern District of Georgia by the appellee, the Federal Reserve Bank of Atlanta. The appellants were state banks of Georgia, not members of the federal reserve system. The relief prayed for in

the petition filed in the state court was an injunction against the appellees, restraining them from collecting checks drawn on appellants, "except in the usual and ordinary channel of collecting checks through correspondent banks or clearing houses"; the purpose being to·prevent collection through agents presenting the checks over the banks' counter. The appellants moved to remand the cause to the state court, which was denied, and the bill was dismissed on the appellees' motion to dismiss for want of equity. The appeal presents the questions of the correctness of the rulings of the District Court (1) in refusing to remand the case and (2) in dismissing the bill on the merits.

1. The jurisdictional amount is conceded to be present. There was no diversity of citizenship claimed. Removal was granted because the cause was considered to be one arising under the Constitution and laws of the United States—this because (1) the defendant, the Federal Reserve Bank, was incorporated under an act of Congress, and was neither a railroad incorporation nor a national banking association; and (2) because the appellants' petition or bill, as amended, introduced a federal question into the record, in that it charged the acts of the defendants, sought to be enjoined, to be ultra vires of the powers of the appellee, the Reserve Bank, granted by the Federal Reserve Act (38 Stat. 251) and its amendments. If the District Court had original jurisdiction of the cause of action for either or both of the reasons mentioned, the cause was properly removed. The appellants contend that the Federal Reserve Bank is a national banking association, the presence of which as a party defendant would not introduce a question arising under the laws of the United States, and that there is no other such question presented by the appellants' petition or bill.

[1] We think the United States District Court had original jurisdiction of the cause of action for both of the reasons assigned. The case of Osborn v. Bank of the United States, 9 Wheat. 738, 6 L. Ed. 204, supported by many subsequent decisions of the Supreme Court, settles the question of the jurisdiction of the federal court in cases in which one of the parties is a corporation which owes its creation to an act of Congress, unless another act of Congress has withdrawn such jurisdiction. Nor is it important whether the federal incorporation occupies the position of plaintiff or of defendant in the action. This is true, unless a long line of Supreme Court decisions, in which jurisdiction was sustained upon this ground, without reference to the position of the corporation in the lineup of the parties, be disregarded. From this follows the right of a federal incorporation, made a defendant in a cause in a state court, to remove the cause to the federal court, unless prohibited by an act of Congress. Texas & Pacific Railway Co. v. Cody, 166 U. S. 606–609, 17 Sup. Ct. 703, 41 L. Ed. 1132; Washington & Idaho R. R. Co. v. Cœur d'Alene Ry. Co., 160 U. S. 77–93, 16 Sup. Ct. 231, 40 L. Ed. 355. Congress has withdrawn jurisdiction only in cases of railroad companies and national banking associations.

The contention of appellants is that the Federal Reserve Bank of Atlanta is a national banking association, within the meaning of the Act of July 12, 1882, c. 290 (22 Stat. 162), the Judiciary Act of March

3, 1887 (24 Stat. 552), as corrected by the Act of August 13, 1888, c. 866, § 4 (25 Stat. 436), and by section 24 of the Judicial Code of 1911 (Comp. St. § 991). The prohibiting clause of the latter is:

"And all national banking associations established under the laws of the United States shall for the purpose of all other actions against them, real, personal, or mixed, and all suits in equity, be deemed citizens of the states in which they are respectively located."

If this language applies to the Federal Reserve Banks, it withdraws jurisdiction from the federal courts in cases in which they are parties, and in which no other ground of jurisdiction appears in the record. We do not think it can be held to apply. At the time of the original limitation of jurisdiction in the Act of July 12, 1882, and at the time of its renewals in the Judiciary Act of 1887, and in the Judicial Code of 1911, federal reserve banks were unknown. The only national banking associations, then existent, were the national banks organized under the national banking laws. The question is whether Congress intended to include within this designation banks to be subsequently created of the nature of the federal reserve banks. The answer will depend upon the result of a comparison instituted between the national banks and the reserve banks, and is to be determined, not so much by points of identity (for all banks have many such), but by points of difference.

The important differences between national banks and reserve banks, so far as the solution of this question is concerned, are (1) the disparity in the number of each class, and (2) that the reserve banks are banks of deposit and discount for other banks only, and not for the general public. There are many other important differences, but we think the two mentioned are determinative. The one class, small in number, acts as governmental fiscal agencies, with no general clientèle; the other class serves the public generally and locally, and they are necessarily numerous. That all the provisions of the National Banking Act could be made applicable appropriately or safely to the class of reserve banks is clearly impossible. Yet the same reasoning that would apply the limitation of jurisdiction imposed upon national banks to reserve banks would make it necessary to apply all other limitations against and grants in favor of national banks to reserve banks. If the reserve banks are national banking associations, within the meaning of the Act of July 12, 1882, and its successors, for one purpose, they are so for all purposes, of the national banking laws. Such a conclusion would be a dangerous one, and lead to unforeseeable consequences.

We think it safer to conclude that Congress intended national banking associations to include those only that were then being created, or those of a kindred nature that might thereafter be created, and that the differences between ordinary banks of deposit and discount, with the public as customers, and banks whose only permissible stockholders and customers are the government and other banks, and which are more governmental agencies than private institutions, are not within the purview of national banking associations, as contemplated by

Congress when it enacted the limitation upon the jurisdiction of national banking associations. In view of the paucity in number of the reserve banks, and their more intimate relation to the government, and their more remote contact with the general public, Congress may well have found reason not to withdraw the jurisdiction of the federal courts from them by reason of their federal incorporation, though it had done so in the case of national banks. There is no express withholding of such jurisdiction. To imply it would necessarily lead to other implications so far-reaching and difficult to anticipate that we do not think it should be implied.

If the fact of federal incorporation of the reserve banks confers jurisdiction on the federal court, the fact that the officers of the appellee bank are made individual codefendants with it, and that they are citizens of Georgia, does not prevent removal. Matter of Dunn, 212 U. S. 374, 29 Sup. Ct. 299, 53 L. Ed. 558.

[2] 2. The amendment to the bill or petition of appellants charged that the acts of the appellees sought to be enjoined, if committed, would be committed in excess of the powers of the Federal Reserve Bank of Atlanta, and in violation of the provision of the Federal Reserve Act. Paragraph 9 of the amendment charges that—

"The coercive measures, now threatened, are not only not authorized or required by the terms of the Federal Reserve Act, which includes the charter of defendant reserve bank, but express provision is found therein for the performance of all clearing house functions, therein imposed in the regular way and through orderly banking channels, applicable to nonmember banks, as well as member banks. Wherefore plaintiffs charge that the threatened coercive measures are ultra vires the charter of defendant Reserve Bank, and the execution thereof by the individual defendants would be illegal and should be enjoined."

The purpose of the petition or bill was not to enforce the collection of compensation for services availed of by the defendant Reserve Bank, at their reasonable value under the common-law right. It was to compel the defendant bank to avail itself of such services, or, as an alternative, to abstain from handling the plaintiffs' check for collection. The bill prayed that the defendant bank be enjoined from presenting petitioners' or plaintiffs' checks for collection in any but the usual way through correspondence and remittance. Section 13 of the Federal Reserve Act provided that "no such charges [for remission] shall be made against the federal reserve banks."

Appellants' contention is that this prohibition prevents the federal reserve banks from expending money in any way for the collection and remission of the proceeds of checks and drafts, drawn on nonmember and nondepositing banks, and that any attempt to collect such checks and drafts, by presenting them over the counter to drawee banks, which would not remit for them at par, was unauthorized and ultra vires of the powers of the reserve banks, under the Federal Reserve Act; and appellants ask that the defendant bank be enjoined from handling such checks and drafts in the manner stated for that reason. Appellee the Reserve Bank asserts its right under the same provision of the Federal Reserve Act to collect such checks and drafts by any

method, provided it makes no payments to remitting banks for services in remitting. Plaintiffs' cause of action was the alleged wrong asserted by them to be caused by such collections. One ground upon which the wrong was urged is that the Reserve Bank is forbidden by the Reserve Act to make collection of checks and drafts in this manner. This presents for decision the proper construction of the quoted provisions of the Federal Reserve Act, and it was presented in the plaintiffs' own statement of their cause of action in the amendment to the bill, and not as a suggested or anticipated defense which the defendants might be expected to set up as an answer to the plaintiffs' cause of action. The solution of this question depends upon the construction to be given sections 13 and 16 of the Federal Reserve Act (Comp. St. §§ 9796, 9799), and not merely to a chartered power of the defendant bank. The plaintiffs having injected this federal question into their statement of their cause of action, the case was thereby made removable, as one arising under the laws of the United States.

We think the District Court of the United States properly entertained jurisdiction for both reasons.

[3] Coming to the merits, the appellants' cause of action is the prevention by injunction of the Federal Reserve Bank of Atlanta from collecting checks drawn on appellants' banks, in any other way than by correspondence and the remitting of the proceeds of the check by the bank on which it was drawn. The usage of the complaining banks had been to make a deduction from the amount of the check in remitting the proceeds to cover the so-called "exchange" or cost of remitting. This charge could only be applied in cases in which the check was forwarded through the mails to the drawee bank. If the check was presented over the counter of the drawee bank, either by the payee or his agent, the full amount of the check was required to be paid, and the drawee bank was defeated in its endeavor to collect exchange on it. The purpose of the bill was to prevent the Federal Reserve Bank from handling checks on appellants and on other nonmember state banks, except through the regular channel of correspondence or clearing. Section 13 of the Federal Reserve Act, as amended, prohibited the Federal Reserve Bank from paying for the cost of remission. Consequently it was disabled from collecting through the regular channel from all banks which insisted on deducting for the cost of remission. In the case of all such banks it had the alternatives of not handling their checks at all, or of presenting them for collection over the counters of the drawee banks by agents, express companies, or the postal authorities.

One contention of the appellants is that the Federal Reserve Act prohibited the reserve banks from handling any checks, the collection of which entailed any expense, to whomsoever payable, and that their endeavor to collect checks by presenting them at the counter of the drawee was ultra vires, because expense was necessarily incident to that method. Another contention of appellants is that, though the Federal Reserve Bank had the lawful right to handle such checks, it was making or intending to make an oppressive use of its right, by so

exercising it as to amount to coercion or duress and with a wrongful and malicious motive. If the Federal Reserve Bank had availed itself of the services of the complaining banks in the remission of the proceeds of checks sent them for collection through the mails, in view of their known usage to deduct for exchange, it would have been liable for the reasonable value of such services, except for the statutory inhibition against it. The purpose of the bill, however, is not to collect compensation for services rendered and to which the banks had a property right, but to compel the Federal Reserve Bank to avail itself of services which it was unwilling to and disabled from accepting, by restraining it from using any method which did not require the use of such services. Complaining banks had no property right that was infringed by the refusal of the Federal Reserve Bank to avail itself of their services in remitting, or that a court of equity could be called upon to protect. It was under no legal duty to accept the services of the complaining banks, even had there been no statutory obstacle to its doing so. It also had the legal right to present the checks of the complaining banks to them for payment singly or in numbers over their counters, and it was the absolute duty of the complaining banks to pay the full amount of such checks without deduction, when so presented.

This is disputed by appellants only because of the statutory prohibition against the federal reserve banks paying the cost of remission of the proceeds of checks collected by it. It is contended that this provision not only prohibited the reserve banks from paying exchange to remitting banks on which the checks were drawn, but also from paying expense of any kind or to any person for collecting checks, and that as a consequence the federal reserve banks were without power to handle any checks for collection, where such collection was attended with expense of any kind. If so, it would follow that the endeavor to collect checks over the counter through paid agents was within the prohibition of the Federal Reserve Act as amended and ultra vires. Whether appellants' construction of the prohibiting clause is correct depends upon the purpose it was intended to subserve. Appellants' contention is that its purpose was to conserve the assets of the Reserve Bank. Appellees' contention is that it was to aid in accomplishing a uniform par clearance system. In view of the purpose of Congress to effect the latter object, we think the appellees' construction is the correct one, and that the prohibition is limited to a charge against and payment of the charge to a remitting bank, and does not prevent the federal reserve banks from expending money for collection of checks in any other way in an endeavor to accomplish a uniform system of par clearance. It follows that the acts of the Federal Reserve Bank complained of are within its legal powers.

Conceding that they were ultra vires solely because entailing an unauthorized disposition of the banks' assets, the appellants and interveners, who were neither stockholders nor creditors of the Reserve Bank, would have no standing to complain of such a disposition, because of a collateral injury to them. The right to make complaint on

that ground would be confined to the United States or to individuals who were injured by the depletion of the banks' assets. If the purpose of the prohibition was altogether to save expense to the federal reserve banks, and if the statute evinced no policy to prevent the reserve banks from handling checks of nonmembers and nondepositing banks, if it incurred no expense, the mere incidental injury that appellants suffered from the handling of such checks would give it no right to complain of an expenditure from which it could suffer no injury. The Federal Reserve Act does not only not evince a purpose to deny to the Reserve Bank the power to collect checks of nonmember and nondepositing banks, but exhibits a general policy to encourage a uniform and universal system of par clearance, which would only be accomplished by conferring power upon the Reserve Bank to handle checks drawn on all banks upon any terms that might be essential, except the payment to the remitting bank of compensation for remitting.

[4] The appellants contend further that, even if the Federal Reserve Bank had the right to handle checks of nonmember banks by presenting over the counter, it could not exercise that right oppressively; that it was threatening to do so, and should therefore have been enjoined. The prayer of the bill is not limited to an oppressive use of the method complained of, but extends to any use of it whatsoever. The bill seeks to enjoin the appellee bank—

"from collecting or attempting to collect any check against petitioners, or against any other bank in like condition, who may become a party hereto, except in the usual and ordinary channel of collecting checks through correspondent banks or clearing houses; said channels being well established and well understood by defendants and all others familiar with the banking business."

Appellants' complaint is of the method, and not of an abuse of it. The effect of the writ prayed for would be to entirely prevent the appellee bank from collecting checks in any other way than by transmission to the drawee bank, and the remission of the proceeds by the drawee bank through the mails, and so to prevent their collection by presentation over the counter, even though presented regularly and without accumulation.

The right to the relief sought is also based upon the doctrine of conspiracy. An illegal conspiracy is not predicable upon the doing of a lawful thing by lawful means, even when done in concert or combination. The bill fails to show a concert or combination that would amount to a conspiracy in law, though its object or the means by which it was to be accomplished were unlawful. The acts complained of were those of the defendant the Federal Reserve Bank. No legal conspiracy could exist between it and its officers, the other defendants. The amended bill charges a conspiracy between the Federal Reserve Bank of Atlanta and the federal banks of other districts, upon the theory that all the federal reserve banks are under control of the Federal Reserve Board. The federal reserve banks of other districts have no power to act upon the petitioners or the interveners. Their jurisdiction in that respect is confined to their own districts. Being without power to injure the complaining banks, they could not be

members of a conspiracy against such banks. The members of the Federal Reserve Board are not charged as conspirators. That other federal reserve banks had taken coercive steps against state banks in their districts to enforce the par clearance policy, as charged on hearsay information in the amended bill, has no bearing on the cause of action relied upon by appellants in this case. Appellants can take nothing from the doctrine of conspiracy.

The principle that one must so use his property as not to unnecessarily and maliciously injure his neighbor, even though his act is otherwise lawful, is also invoked. Conceding that the accumulating of checks, and their presentation, when accumulated, with the intent to embarrass and injure the drawee bank, might constitute an actionable wrong and one that might be prevented by injunction; we do not think the amended bill presents any such case. There is no specific charge in the bill of any threat to present the checks in any accumulated or oppressive manner, on which a court of equity would be justified in acting. Nor does the bill charge the appellee bank with acting from a merely malicious motive, if that is material. It does aver that the purpose of the appellee was to compel the appellants to accept the lesser of two evils and to remit at par for checks drawn upon it. If this charge was borne out by the exhibits, which it is not, it would not constitute legal duress, on which a legal complaint could be predicated. The exhibits show that the adoption of a system of universal par clearance was advocated in good faith by the appellee bank as a proper banking policy, and as well by Congress and the Federal Reserve Board. The adoption of appropriate means by the appellee bank to accomplish this end cannot with any propriety be attributed to malice on its part against appellants and other banks in like condition.

Nor does the adoption of the method of presenting checks over the counters of the drawee bank imply an attempt to coerce them into becoming member or depositing banks. The Federal Reserve Bank was interested to supply a universal clearance at par for its member and depositing banks. It could accomplish this only by accepting from its member and depositing banks all checks tendered it by them upon whatever banks drawn. If drawn upon a nonmember and nondepositing bank, which refused to remit at par, it was disabled under the statute from handling such checks through the method of transmission of the checks and remittance of the proceeds through the mails. It could only collect such checks by presentation in person to the drawee bank. It is therefore reasonable to suppose that its declared purpose of making such presentations was in furtherance of its policy of furnishing complete clearing facilities to its member banks, and was not for the purpose of injuring or destroying the drawee banks, or of coercing them into becoming member or depositing banks with it. It constituted an essential step, without which universal par clearance was not possible of accomplishment.

We conclude that the District Court had jurisdiction, and that its decree dismissing the bill for want of equity was without error, and it is therefore affirmed.