**INTERNATIONAL LADIES' GARMENT WORKERS' UNION, AFL, and San Antonio Joint Board of the International Ladies' Garment Workers' Union, Appellants,**

v.

**JAY-ANN COMPANY, Incorporated, Appellee.**

No. 15636.

United States Court of Appeals Fifth Circuit.

Jan. 11, 1956.

Charles J. Morris, Dallas, Tex., Mullinax & Wells, Dallas, Tex., of counsel, for appellants.

Theo. F. Weiss, San Antonio, Tex., Davis, Clemens, Knight & Weiss, San Antonio, Tex., of counsel, for appellee.

3. Pacific Employers Ins. Co. v. Brannon, 150 Tex. 441, 242 S.W.2d 185; Brannon v. Pacific Employers Ins. Co., 148 Tex. 289, 224 S.W.2d 466.

Before HOLMES, RIVES, and CAMERON, Circuit Judges.

HOLMES, Circuit Judge.

This appeal is from a judgment of dismissal of the suit, entered by the court below after considering the complaint, answer, evidence, and motion to dismiss. One of the grounds set forth in the motion to dismiss was that Section 301 of the Labor-Management Relations Act of 1947, 29 U.S.C.A. § 185, which is the sole asserted basis of jurisdiction, did not confer jurisdiction of the type of suit alleged by appellants.

The appellants are unincorporated labor organizations, representing employees in an industry affecting interstate and foreign commerce. The appellee is a Texas corporation, engaged in the business of manufacturing and distributing wearing apparel. A substantial portion of the garments which it manufactures is sold and distributed outside the state of Texas. Appellants and appellee have entered into various contracts covering wages and working conditions, which have been continuously in effect since 1947. It is for breaches of these contracts that this suit was filed; under them the appellee was to pay 1%, and later 1¼%, of their payrolls to a designated commission of five members to create a health and welfare fund for workers. The complaint alleged that the appellee had failed to make these payments, and that as a result thereof the employee whom appellants represent have been damaged in the sum of over four thousand dollars. The appellants prayed that the appellee be ordered to pay said amount in damages to said commission for the benefit of the aforesaid health and welfare funds, be enjoined from withholding future payments, and for general relief.

■ As appears from a reading of the complaint, the appellants did not seek a money judgment in their favor against the appellee. If the money was due at all, it was payable to said commission, which was to collect and administer the fund. The appellants claim the right to bring the suit under Rule 17(a) of the federal rules of civil procedure, 28 U.S.C. Federal jurisdiction is predicated solely upon section 301, supra. The contracts sued on were made in Texas and were to be performed there. If breached, they were breached in Texas; they are governed largely by the laws of Texas, but in some particulars they may be governed by federal statutes. There is much substantive labor law in the federal statutes regulating interstate and foreign commerce. Wherever the federal law applies it preempts the field, but elsewhere the local law prevails; there is no legal hiatus or no-man's land under our dual form of state and national government; but there is no controversy here between the parties over any governing substantive federal law or laws on which the merits of this case depend.

■ Our decision of the jurisdictional point on this appeal is controlled by the ruling of the Supreme Court in Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 348 U.S. 437, 75 S.Ct. 489, which held that the federal district court did not have jurisdiction of the suit. The opinion of Justice Frankfurter in that case was concurred in by Justices Burton and Minton; the other justices concurred specially, except Justices Black and Douglas who dissented and Justice Harlan who took no part in the decision. For present purposes, only that portion of the decision concurred in by the Chief Justice and Justice Clark is invoked; it held that neither the language nor legislative history of Section 301 was sufficient to indicate that Congress intended to authorize a union to enforce the personal rights of employees (for whom it had bargained) to receive compensation for services rendered their employer. The concurring opinion of Justice Reed assumed that the purpose of section 301 was to make unincorporated labor organizations suable and capable of suing as if they were corporations, with provisions for venue and service.

634

■ Labor unions have always been suable whether incorporated or not; but as a practical matter, if not incorporated, it was difficult to sue them. They had many members; in some of the states all of the members had to be served with process; and it was difficult to know whom to serve. Section 301 makes them suable as if corporations, whether incorporated or not; it also abolished some jurisdictional requisites, but it did not abolish the requisite of a normal federal question that has been in the statutes since 1887, which was par. 8, § 24, of the Judicial Code of March 3, 1911, and is now 28 U.S.C. § 1337. All the statutes contain the classic words "arising under" any law regulating commerce or "arising under" any act of Congress regulating commerce. It is the case or controversy that must arise under the law regulating commerce. The crucial problem is the degree to which federal law affects the decision of the controversy; in the instant case federal law does not affect it at all on its merits. Gully v. First Nat. Bank, 299 U.S. 109, 113, 57 S.Ct. 96, 81 L.Ed. 70; Association of Westinghouse Salaried Employees v. Westinghouse Elec. Corp., 348 U. S. 437, 75 S.Ct. 489. If unincorporated labor associations were to sue and be sued as legal entities, the astute legislative thing to do was to abolish the jurisdictional ground of diversity of citizenship and the amount in controversy, thereby conforming section 301 to the general statute, 28 U.S.C. § 1337; and avoiding the opening of a Pandora's box with reference to the legal fiction that corporations are deemed citizens of the state of their incorporation. See "A Supreme Court Fiction" in three installments of the Harvard Law Review, Vol. 56, beginning at pp. 853, 1090, and 1225, respectively.

■ It is self-evident that if unincorporated labor organizations may sue or be sued as if corporations, such organizations stand in no better or worse position, when suing or being sued, than an incorporated labor organization similarly situated. Corporations under the laws of any state are deemed citizens thereof for federal jurisdictional purposes; corporations organized under the laws of the United States (except national banks, see 28 U.S.C. § 1348) are ordinarily not deemed citizens of any state; but formerly they were permitted to sue and be sued in the federal court, since the suit was held to arise under the laws of the United States. This right was later restricted by a statute which provides that the district courts shall not have jurisdiction of any civil action by or against any corporation upon the ground that it was incorporated by or under an act of Congress, with an exception not pertinent here. 62 Stat. 934, 28 U.S.C. § 1349.

■ Cases arising under the constitution, laws, and treaties of the United States are customarily referred to as cases containing a federal question, which is the only ground of federal jurisdiction not abolished by Section 301 (a) of the Act of June 23, 1947, 61 Stat. 156; 29 U.S.C.A. § 185. With diversity jurisdiction abolished, and jurisdiction as to federally created corporations restricted, there is no concept other than the normal federal-question by which to determine the original jurisdiction of the district court in this case. Without the normal federal-question concept as a criterion, there is no standard of judging jurisdiction, no test in forming a correct judgment. Federal jurisdiction is limited as to place, persons, or subject matter; and the normal federal-question remains as a jurisdictional requisite in relation to subject matter in a controversy between an employer and a labor union representing employees in an industry affecting commerce.

There is an abnormal type, which has been described as a constructive federal-question and which arises from the mere fact of federal incorporation. This was held to be true even though some state rule of law was applicable to the issue. This abnormal type of federal-question jurisdiction was taken away with reference to federally incorporated railway companies by an act of January 28, 1915.

§ 5; 38 Stat. 804. In 1925, this kind of federal-question jurisdiction was taken away with respect to all other federal corporations, except those in which the national government owns more than half the capital stock. Act of February 13, 1925, § 12; 43 Stat. 941. This jurisdiction is granted, withdrawn, or restored, in suits by or against federal corporations, in the exercise of legislative power, as conceded by the Supreme Court in Osborn v. Bank of the United States, 9 Wheat. 738, loc. cit. 823, 6 L. Ed. 204; 56 Harvard Law Review 1120–1122.

In the Westinghouse case, the majority avoided all serious constitutional problems "through the orthodox process of limiting the scope of doubtful legislation.' It refused to rely on an assumed federal concept of the nature of a collective bargaining agreement and held, despite the broad wording of the statute, that there was no federal jurisdiction of the subject matter. Mr. Justice Frankfurter said that there was internal evidence of the fact that the reference in section 301 to the parties was simply for the purpose of defining the subject matter and that the scope of jurisdiction must satisfy constitutionally defined cases arising under federal law. We think that, if the legislative intention had been otherwise, the last two lines of section 301(a) should have read as follows: " * * * without respect to the amount in controversy, without regard to the citizenship of the parties, and without regard to the absence of a federal question." Thus the plain language of the statute, the language omitted therefrom, the old law, the evil, the remedy, the legislative history, including Mr. Taft's statement on the floor of the Senate, all clearly indicate that there was no legislative intention to abolish the jurisdictional requisite of a federal question in par. 8, § 24, of the Judicial Code of March 3, 1911. It is not the contract but the controversy, arising under a federal law, that creates a federal question and affords jurisdiction of the subject mat-

ter. In this respect Senator Taft uttered a rather casual non sequitur, according to Mr. Justice Frankfurter; but certainly this indicated no intention to abolish the federal-question as a ground of federal jurisdiction. Association of Westinghouse Salaried Employees v. Westinghouse Elec. Corp., 348 U.S. 447, 75 S.Ct. 489.

As to the abnormal federal question, which has been described as a constructive federal question arising from the mere fact of federal incorporation, see Pacific Railroad Removal Cases (Texas & Pacific R. Co. v. Kirk), 115 U.S. 2, 11, 5 S.Ct. 1113, 29 L.Ed. 319; Texas & Pacific Ry. Co. v. Cody, 166 U.S. 606, 17 S.Ct. 703, 41 L.Ed. 1132; Gully v. First National Bank, 299 U.S. 109, 115, 57 S.Ct. 96, 81 L.Ed. 70; Anthony Wayne Post No. 418 v. American Legion, D.C., 5 F.Supp. 395, 396. This kind of jurisdiction was taken away except where the national government owns more than half the capital stock. In 1936, the Supreme Court said: "Only recently we said after full consideration that the doctrine of the charter cases was to be treated as exceptional, though within their special field there was no thought to disturb them." Gully v. First National Bank, 299 U.S. 109, 114, 57 S.Ct. 96, 98.

Section 301 also includes any labor organization whether chartered by a state or the federal government; the section implies a normal federal-question jurisdiction to the extent provided in other statutes, all other jurisdictional requisites having been abolished in suits by or against labor organizations representing employees in an industry affecting commerce. The intention was that jurisdiction of the federal district courts in suits by or against corporate entities created by states should be the same as that for suits by or against unincorporated labor organizations, which were newly created legal entities. In other words, the legislative intention was that nothing might be claimed by unincorporated labor entities because of the source

636

of their creation. Compare the legislative history as to suits by or against national banks, 28 U.S.C.A. § 1348.

■ In addition to the jurisdictional point as to the absence of a substantial federal question, the appellee claims that there were other grounds in its favor equally decisive of the case, one being the absence of indispensable parties which in one sense may be said to be jurisdictional. The absent parties are the five members of the commission to whom the percentage pay-roll payments are allegedly due and payable. This commission is the real party in interest, and its members should be brought in as either defendants or involuntary plaintiffs. It would not be possible to decide this case in favor of appellee on its merits without prejudicially affecting the rights of said absent parties. In such a case due process forbids a court to proceed without the absent parties.

Affirmed.

.- RIVES, Circuit Judge (concurring specially).

I concur in the judgment of affirmance because I think that the Commission created by the contract to administer the Health and Welfare Fund is entitled to the payments which the employer is obligated to make and is an indispensable party to this suit.

With deference, however, I disagree with the views of the majority as to the meaning of Section 301 of the Labor-Management Relations Act of 1947, 29 U.S.C.A. § 185, and of the opinions of the Justices and the decision of the Court in the Westinghouse Case, 348 U.S. 437, 75 S.Ct. 489. To my mind, Section 301(a) [1] plainly confers federal jurisdiction of the subject matter of the violation of a contract between an employer and a labor union in an industry affecting commerce. The legislative history [2] as clearly shows the intent of Congress to provide express statutory recognition of the binding effect of the collective agreement on both the union and the employer, and an effective means of enforcement by either against the other in the federal courts, for the purpose of promoting industrial peace in matters affecting interstate commerce. It seems to me, therefore, that the district court had jurisdiction of the subject matter because this action arises under an Act of Congress regulating commerce. Compare 28 U.S.C.A. § 1337; Capital Service, Inc. v. N. L. R. B., 347 U.S. 501, 504, 74 S.Ct. 699, 98 L.Ed. 887, and cases there cited.

The medical care and retirement benefits to which each employee might be entitled under the contract could not be foretold. The union claimed the right to enforce payments to the health and welfare fund. It seems to me that in the Westinghouse Case, supra, Chief Justice Warren and Justices Black, Reed, Douglas, and Clark, left the door open for federal jurisdiction of an action to enforce a right under the contract claimed by the union as an entity, and that there is nothing in the Court's decision in that case to the contrary.

1. "(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C.A. § 185(a).

2. For example, Senate Report 105, 80th Congress, pp. 15–18:
"Consequently, to encourage the making of agreements and to promote industrial peace through faithful performance by the parties collective agreements affecting interstate commerce should be enforceable in the Federal courts. *Our amendment would provide for suits by unions as legal entities and against unions as legal entities in the Federal courts in disputes affecting commerce.*

\* \* \* \* \*

"*Statutory recognition of the collective agreement as a valid, binding, and enforceable contract is a logical and necessary step.* It will promote a higher degree of responsibility upon the parties to such agreements, and will thereby promote industrial peace." (Emphasis supplied.)

I agree that due process forbade the district court to proceed without the Commission, though I think that it had jurisdiction of the subject matter. I therefore concur specially.