**COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO, Plaintiff,**

v.

**The OHIO BELL TELEPHONE COMPANY, Defendant.**

Civ. A. No. 34049.

United States District Court
N. D. Ohio, E. D.
April 11, 1958.

Howard M. Metzenbaum, of Metzenbaum & Schwartz, Cleveland, Ohio, for plaintiff.

Ashley M. Van Duzer and Fred J. Perkins, of Arter, Hadden, Wykoff & Van Duzer, Cleveland, Ohio, for defendant.

WEICK, District Judge.

The complaint sets forth a claim for specific performance of a collective bargaining agreement alleged to have been entered into on or about September 30, 1957, which the defendant failed and refused to perform.

The prayer was for a declaratory judgment determining the validity of the agreement and ordering the defendant to carry out its terms and provisions including payment of wage increases which, on the date the action was commenced, amounted to over $360,000.

Jurisdiction was based on the Federal Declaratory Judgment Act (28 U.S.C.A. § 2201) and Section 301(a) of the Labor Management Relations Act (29 U.S.C.A. § 185).

The defendant, in its answer, challenged the jurisdiction of the Court on the ground that the plaintiff did not seek to enforce any right asserted by plaintiff as a labor organization, but on the contrary sought to enforce claims belonging to the individual employees.

Defendant denied that it entered into a collective bargaining agreement with plaintiff on September 30, 1957, but alleged that it made an offer to plaintiff which plaintiff did not accept.

Plaintiff moved for a preliminary injunction to restrain defendant from violating the collective bargaining agreement of September 30, 1957, which motion was heard on the evidence. At the hearing, it developed that the alleged collective bargaining agreement was an oral one and was disputed by the defendant. To have granted the relief requested would have put an agreement into effect which the Court on final hearing might determine did not exist. The motion was therefore denied and the case was later tried on its merits.

A written collective bargaining agreement had been entered into by the parties on September 9, 1956 for a period ending on September 7, 1957. It was to remain in effect until terminated by either party on sixty days notice. Neither party gave notice of termination.

On July 2, 1957 the Union notified the Company by letter that it desired to negotiate modifications of the existing agreement. Pursuant to the notice, bargaining committees were selected by each party and the bargaining commenced on July 31, 1957 in the Carter Hotel in Cleveland.

The Federal Mediation and Conciliation Service entered the case and, with the consent of the parties, Commissioner Thomas W. Robertson took an active part assisting in the negotiations.

On September 8th defendant's employees, in some localities, left their jobs and on September 16 an official strike was declared.

During the course of the bargaining the company submitted in writing so-called package offers.

The Union claims that it accepted the package offer designated as Plaintiff's Exhibits 1, 2, 3, 4a, 4b, 4c and 4d; that it communicated its acceptance verbally to Commissioner Robertson and authorized him to notify the Company's bargaining committee thereof which it claims Robertson did near midnight on September 30th or early in the morning on October 1, 1957.

The Company denied receiving notice of acceptance of its offer from Commissioner Robertson or anyone else. It further claimed that its offer was tied in with and conditioned upon the execution by both parties of a back to work agreement which it submitted to the Union through Commissioner Robertson and that the Union refused to execute the back to work agreement.

In the back to work agreement were provisions for the orderly return to work of the employees, without discipline or discrimination of either party, on account of participation or non-participation in the strike.

The back to work agreement further provided for an adjustment of the net credited service of the striking employees, so as not to allow them credit for working on the seventeen days they were absent on strike, with respect to the Company's non-contributing pension fund, vacation allowances, termination allowances and sickness and death benefits.

The Union claimed that the adjustment of net credited service was a discrimination against striking employees and a penalty against them for their participation in the strike.

The Company's position was that "an unpredictable number of persons would be affected by the adjustment" and that it "was merely asking to be relieved from part of the burden of paying indirectly for time not worked during the strike."

This created a dispute between the parties over a matter of principle and neither party has been willing to recede from its original position.

The parties continued joint bargaining sessions on October 1, 1957 and thereafter until October 22, 1957. On October 3, 1957 the Union ordered the employees to return to work.

On December 19, 1957, during the trial, the parties entered into a written agreement whereby they put into effect the package offer of the Company which the Union claimed it had accepted on September 30, 1957. The new collective bargaining agreement was to be effective December 1, 1957 for a period of fifteen months. In all respects the new agreement was identical with the agreement sued on except its effective date was two months later.

The parties expressly provided that the final judgment in this case would control with respect to the controversy over the adjustment of net credited service.

The agreement provided that if the Union prevails in this case then the final decree of the Court determining the agreement of September 30, 1957 shall supersede the agreement effective December 1, 1957 in which event there will be no adjustment of net credited service.

If the final judgment herein is adverse to the Union then the provisions for adjusted net credited service shall become operative as part of the agreement effective December 1, 1957.

Pending the decision, the Company was authorized to treat the adjustment of net credited service as being in effect and to administer it. The Company would be required to make refunds in the event of a final adverse decision to it. It was claimed that if the right to make the adjustment of net credited service were deferred until the final outcome of the case, it would be practically impossible for the Company to recover the money equal to the adjustments.

The Union also agreed not to question the legality of the agreement.

While it is laudable that the parties agreed at least to a partial settlement, they have attempted to reserve for determination by the Court the disputed issue of fact whether an oral agreement was reached on September 30, 1957 or in the early morning of October 1, 1957 and, if so, the terms and conditions of such agreement.

At the threshold of the case we are met with the claim that the Court has no jurisdiction.

■ The Federal Declaratory Judgment Act (28 U.S.C. § 2201) "enlarged the range of remedies available in the federal courts but did not extend their jurisdiction." Skelly Oil Co. v. Phillips Petroleum Company, 1950, 339 U.S. 667, 671, 70 S.Ct. 876, 879, 94 L.Ed. 1194.

Since it was not claimed that there was a diversity of citizenship in this case, resort for jurisdiction must be made to Section 301(a) of the Labor Management Relations Act which provides:

"*Suits for violation of contracts* between an employer and a labor organization representing employees in an industry affecting commerce * * * may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

Section 301(b) of the Act provides:

" * * * Any such Labor organization may sue * * * as an entity and in behalf of the employees whom it represents in the courts of the United States. * * * "

The Supreme Court, in Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 1955, 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510, held that § 301(b) of the Labor Management Relations Act did not confer jurisdiction on the district court to interpret collective bargaining contracts, declare the rights of the parties, compel the employer to make an accounting and enter a judgment in favor of the individual employees, who were not parties to the suit, for unpaid wages. These rights were deemed to be uniquely personal to the employees and enforceable by them in the state courts.

In other words, title to the cause of action for wages was in the individual employee and not the Union.

In Textile Workers Union of America v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, the Supreme Court upheld the right of the union to specific performance of the arbitration clause in a collective bargaining agreement.

Mr. Justice Douglas, in delivering the opinion of the Court, said:

"Plainly the agreement to arbitrate grievance disputes is the quid pro quo for an agreement not to strike. Viewed in this light, the legislation does more than confer jurisdiction in the federal courts over labor organizations. It expresses a federal policy that federal courts should enforce these agreements on behalf of or against labor organizations and that industrial peace can be best obtained only in that way." 353 U.S. at page 455, 77 S.Ct. at page 917.

The Westinghouse case was distinguished on the ground that "there the union sued to recover unpaid wages on behalf of some 4,000 employees. The basic question concerned the standing of the union to sue and recover on those individual employment contracts. The question here concerns the right of the union to enforce the agreement to arbitrate which it has made with the employer." 353 U.S. at page 456, 77 S.Ct. at page 917.

Mr. Justice Burton, with whom Mr. Justice Harlan joined in concurring in the result, pointed out that "The District Court had jurisdiction over the action since it involved an obligation running to a union—a union controversy—and not uniquely personal rights of employees sought to be enforced by a union." 353 U.S. at page 460, 77 S.Ct. at page 919.

The Court of Appeals for this district following Westinghouse has specifically enforced arbitration clauses in collective bargaining agreements. Local 19, Warehouse, Processing and Distributive, Workers Union, etc., v. Buckeye Cotton Oil Co., 6 Cir., 1956, 236 F.2d 776, certiorari denied 354 U.S. 910, 77 S.Ct.

1293, 1 L.Ed.2d 1428; American Lava Corp. v. Local Union No. 222 etc., 6 Cir., 1958, 250 F.2d 137.

In United Steelworkers of America v. Pullman-Standard Car Mfg. Co., 3 Cir., 1957, 241 F.2d 547, 552, the court denied jurisdiction of a declaratory judgment action brought by a labor union and a disabled member against an employer to interpret a provision of a collective bargaining agreement pertaining to pensions.

Circuit Judge Hastie said:

"This body of recent decisions distinguishing Westinghouse points to the likelihood that the language used by the Chief Justice was intended to draw a distinction which would serve to restrict jurisdiction under Section 301 to substantive matters which, whatever the personal interests involved, directly and primarily affect the complaining union as an organization, and procedural controversies about the proper administration of the collective bargaining process for which the union as bargaining agent is responsible. This view leaves suits to establish pension claims, like suits on wage claims, in the category of litigation 'to enforce * * * uniquely personal rights of an employee', which the Chief Justice found to be outside of the intended scope of Section 301. To us this is a plausible and satisfactory rationalization, and we adopt it."

See also: International Longshoremen's & Warehousemen's Union v. Libby, McNeill & Libby, 9 Cir., 1955, 221 F.2d 225; International Ladies' Garment Workers' Union v. Jay-Ann Co., 5 Cir., 1956, 228 F.2d 632.

█ Westinghouse is plain authority for the proposition that the Union may not maintain an action in the District Court to collect wages due to employees. The Union in asking for specific enforcement of the agreement instead of individual judgments in favor of the employees did not change the substance of the action. The result was the same.

■ The net credited service adjustments which affected the employees non-contributing pension fund, vacation allowances, termination allowances and sickness and death benefits fall within the same category as wages and are uniquely personal to the employees. United Steelworkers of America v. Pullman-Standard Car Mfg. Co., supra. If the Company made an adjustment not authorized in the collective bargaining agreement, which the Union claims was entered into on September 30, 1957, the employees affected thereby had a clear right to sue the Company in the state court to obtain redress.

There was no question of bad faith of either of the parties.

The Company has fully performed the collective bargaining agreement dated September 9, 1956 during all of the time the parties recognized that it was in affect and until December 19, 1957 when it was superseded by the new agreement which became effective December 1, 1957.

The parties have agreed that the Company will perform the agreement which became effective on December 1, 1957 or the verbal agreement of September 30, 1957 if it is established by final judgment of the court.

The agreement of September 9, 1956 and the alleged oral agreement of September 30, 1957 were mutually exclusive. The Company ought not to be held in violation of the latter when it was required to and did perform the former until the new agreement of December 19th went into effect.

In view of the December 19th agreement, the Company could not violate the disputed oral agreement of September 30th unless and until the Court entered a final judgment establishing the agreement and ordering its enforcement. If and when this happened the agreement of September 30th would then supersede the agreement effective December 1st with which the Company at present is in compliance.

In reality, all that remains of this case is that the Union wants the Court to determine whether a verbal agreement was made on September 30, 1957 and, if so, its terms and conditions.

While this may furnish the basis for an action for declaratory judgment, it hardly complies with the requirements of Section 301(a) of the Labor Management Relations Act.

Revised Code of Ohio § 1745.01 authorized the Union to contract or sue on behalf of its members and § 2721.01 et seq. provides for declaratory relief.

The Union claims that jurisdiction existed because it is seeking enforcement of the entire collective bargaining agreement of September 30, 1957.

This contention overlooks the actualities of the case. The real dispute between the parties concerned one matter only, namely, the adjustment of the net credited service of the employees.

The Court cannot enforce an agreement until there has been a violation of it by the Company. As heretofore pointed out, no violation of any agreement recognized by the parties as being in effect has been shown.

■ Jurisdiction does not exist in the District Court to determine abstract legal propositions. There must be "a genuine and present controversy, not merely a possible or conjectural one * * *; and the controversy must be disclosed from the face of the complaint unaided by the answer." Skelly Oil Co. v. Phillips Petroleum Co., 10 Cir., 1949, 174 F.2d 89, 98, reversed in part and vacated in part on other grounds 1950, 339 U.S. 667, 70 S.Ct. 876, 94, L.Ed. 1194; Hudson Motor Car Co. v. City of Detroit, 6 Cir., 1943, 136 F.2d 574.

It follows that the Court has no jurisdiction to grant the relief prayed for in the complaint.

This memorandum may be adopted as findings of fact and conclusions of law. An order may be prepared dismissing the complaint for lack of jurisdiction.