UNITED STEELWORKERS OF AMERICA and Joseph Dulya, Appellants,

v.

PULLMAN–STANDARD CAR MANUFACTURING CO., a Corporation.

No. 11894.

United States Court of Appeals, Third Circuit.

Argued Sept. 25, 1956.

Decided Jan. 31, 1957.

Rehearing Denied Feb. 26, 1957.

David E. Feller, Washington, D. C. (S. Harold Grossman, Tarentum, Pa., Arthur J. Goldberg, General Counsel, United Steelworkers of America, Washington, D. C., on the brief), for appellant.

Joseph E. Madva, Pittsburgh, Pa. (Kenneth G. Jackson, Thorp, Reed & Armstrong, Pittsburgh, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and GOODRICH and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

Attempting to assert a claim within the jurisdiction conferred on the courts of the United States by Section 301 of the Labor Management Relations Act of 1947, 61 Stat. 156, 29 U.S.C.A. § 185, appellants United Steelworkers of America, a labor union, and John Dulya, a disabled and retired workman who is a member of the union, filed a complaint in the court below against Pullman-Standard Car Manufacturing Co., Dulya's employer. The complaint alleges that by incorrectly construing certain pension provisions of a collective bargaining agreement, Pullman has paid Dulya a smaller pension than his due and proposes to do the same in all other cases of employees similarly situated. More particularly, it is complained that the employer has erroneously construed the pension agreement as authorizing it to reduce the pension therein provided for a disabled workman by the amount of any statutory workmen's compensation award which may have been made to him for the loss of the use of a bodily member. The complaint asks for a declaratory judgment interpreting the controverted pension provision of the collective bargaining agreement and, in addition, the payment of some $800.00 of accrued pension money to Dulya.

It also is alleged that the pension arrangement originated in and was entirely defined by the collective bargaining agreement between the union and the employer, and that part of the consideration for the employer's agreement to the pension plan was the union's undertaking not to demand or strike for additional pension or disability benefits for a five year period. Finally, the complaint states that the plaintiff Dulya and his fellow union members have constituted the union their exclusive agent in connection with disputes and negotiations as to the proper interpretation of the pension agreement.

These allegations considered, the district court granted a defense motion to dismiss the complaint for want of jurisdiction, saying, "the court is unable to perceive any significant distinction between this case and Association of Westinghouse Salaried Employees v. Westinghouse Electric Corporation, 1955, 348 U.S. 437 [75 S.Ct. 488, 99 L.Ed. 510],

holding that Section 301 of the Labor Management Relations Act does not confer jurisdiction of actions of this type." The plaintiffs have appealed.

Preliminarily, we think it too clear to require demonstration that the addition of Dulya as a party asserting his personal claim for some $800.00 in overdue pension payments does not help the union in its attempt to show that the union's claim is within Section 301. Therefore, we consider and discuss only the union's claim against the employer for declaratory relief invalidating the employer's construction of the collective bargaining agreement as sanctioning, in Dulya's case and generally, the reduction of the agreed pension payments to disabled workmen by whatever amounts the pensioners may have received as workmen's compensation awards for the loss of the use of any bodily member. The problem is, as the district court has said, whether such a claim is cognizable under Section 301 as construed in the Westinghouse case.

Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 1955, 348 U.S. 437, 75 S.Ct. 489, 504, 99 L.Ed. 510 was a controversy between an employer and a union as to whether employees who did not work on a given day were entitled, by force of provisions of a collective bargaining agreement negotiated for them by the union, to pay for that day. The complaint asked for declaratory relief and the actual payment of the wages withheld. The Supreme Court ruled that the stated cause of action was not comprehended by Section 301 of the Labor Management Relations Act and, therefore, that the complaint should be dismissed for want of jurisdiction. However, no rationale of this result won the approval of a majority of the eight Justices who decided the case. Announcing the decision, Mr. Justice Frankfurter analyzed the problem in an opinion in which Mr. Justice Burton and Mr. Justice Minton joined. In a separate opinion Mr. Justice Reed announced that he traveled a different path

to reach the same result. In a third very brief opinion the Chief Justice and Mr. Justice Clark supported and joined in the decision, without associating themselves with the reasoning of Mr. Justice Frankfurter or Mr. Justice Reed. Finally, Mr. Justice Black and Mr. Justice Douglas dissented, saying that even as to wage claims "what the union obtains in the collective agreement it should be entitled to enforce or defend in the forums which have been provided" by Section 301.

The contrariety of the three views expressed by the Justices who constituted the majority of the Court in the Westinghouse case makes it difficult for an inferior court to apply that decision to controversies about matters other than wage claims. The Westinghouse decision necessarily teaches that a controversy about wage claims, even when predicated upon a disputed construction of a collective bargaining agreement, is beyond the power which Section 301 confers upon the federal courts. But, in dealing with any other type of claim asserted by a union under a collective bargaining agreement, the inferior courts are compelled to examine the separate views of the Justices in the Westinghouse case in an effort to discover whether five or more Justices analyzed the Westinghouse problem in such a way as would in logic lead them to the same result in the case at hand. If no such indication of concurrence, albeit by different approaches, can be found, an inferior court may and must work out its own conception of the rational basis which most adequately supports the Westinghouse result, and apply that rationale to the facts at hand.

This brings us to an examination of the several Westinghouse opinions. First of all, it is apparent that the two Justices who dissented in Westinghouse would view the present complaint as within the jurisdiction of the district court under Section 301. There remain the five Justices of the present court who joined in the Westinghouse decision but expressed their views in the three above mentioned

separate and differing opinions.[1] Only if all three opinions denied jurisdiction on grounds broad enough to comprehend the present case are we compelled here to reach the Westinghouse result.

We are satisfied that the reasoning of Mr. Justice Frankfurter, in which Mr. Justice Burton joined, and the reasoning of Mr. Justice Reed would lead these three Justices to the same result in our case as in Westinghouse. We rely upon Mr. Justice Frankfurter's assertion that in enacting Section 301 Congress did not intend "to open the doors of the federal courts to a potential flood of grievances based upon an employer's failure to comply with terms of a collective agreement relating to compensation, terms peculiar in the individual benefit which is their subject matter and which, when violated, give a cause of action to the individual employee." 348 U.S. at page 460, 75 S. Ct. at page 500. Pension provisions of a collective bargaining agreement, no less than the Westinghouse vacation pay provisions, seem to be "terms peculiar in the[ir] individual benefit * * * and which, when violated, give a cause of action to the individual employee." We also note that Mr. Justice Reed said: "The reason, I think, that this union cannot recover from the employer in this suit under § 301 is that the claim for wages for the employees arises from separate hiring contracts between the employer and each employee." 348 U.S. at page 464, 75 S.Ct. at page 502. In the same sense, whatever pension rights workmen may have in the present case seem to "arise from separate hiring contracts between employer and each employee."[2] For it will be remembered that Westinghouse was a case in which the claim to vacation pay was expressly based upon the terms of a collective bargaining agreement.

The more difficult question and the crucial one, as we see it, is whether the opinion of the Chief Justice indicates that he and Mr. Justice Clark would join Justices Reed, Frankfurter and Burton in concluding that Westinghouse has a basis broad enough to require a like result in the present case. Our only guide is the following language of the Chief Justice: "For us the language of § 301 is not sufficiently explicit nor its legislative history sufficiently clear to indicate that Congress intended to authorize a union to enforce in a federal court the uniquely personal right of an employee for whom it had bargained to receive compensation for services rendered his employer." 348 U.S. at page 461, 75 S. Ct. at page 501. In attempting to apply that language we have to ask ourselves whether there is a significant difference between enforcing "the uniquely personal right of an employee for whom it [the union] had bargained to receive compensation for services rendered" and the enforcing of the asserted pension right here.

The right of disabled Pullman employees to receive a pension without diminution on account of any workmen's compensation awards seems to us no less "uniquely personal" than was the right of the Westinghouse employees to be paid for a day on which they did not work. True, it appears clearly here, but not in Westinghouse, that the union had been given exclusive authority to handle claims of the type in question; but this possible difference in arrangements for handling grievances does not go to the character of the right upon which the Chief Justice seems to have relied.

It has also been emphasized on this appeal that the present pension rights are pleaded as having their origin and entire basis in the collective bargaining agreement. But in Westinghouse, too, any right to be paid while not working could only be predicated on the particular provision of the collective bargaining

---

1. We have no clue to the views of the two Justices, in present commission, who did not participate in the Westinghouse case.

2. This similarity of wage and pension claims was affirmatively stated in the opinion of this court in the Westinghouse case. Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 3 Cir., 1955, 210 F.2d 623, 628.

agreement upon which the union relied. There was nothing in the nature of a *quantum meruit* claim in Westinghouse. Thus, the relation of the asserted rights to the collective bargaining agreements reveals no significant difference between the two cases.

We have also considered the fact that the Pullman agreement, different from the Westinghouse agreement, shows that the union furnished part of the consideration for the claim it seeks to assert. More particularly, in return for the employer's acceptance of the pension plan the union here promised that it would not strike for, or otherwise demand, any increase in pension or disability benefits during the ensuing five years. But the fact that the promised union forbearance was part of the price paid for the employees' pension rights does not make these rights more or less directly and intimately personal to the employees, nor does it prevent the services of each employee over the years from being the principal consideration for whatever pension benefits he may acquire. Here again we cannot see that the difference is a significant one.

Actually, we think this case can be significantly distinguished from Westinghouse only by assuming that the Chief Justice intended to place wage claims in a category by themselves, excluding them and nothing else from the reach of Section 301. We cannot believe that this was his meaning because his analysis was predicated upon the presumed intention of Congress and no basis appears for inferring that Congress would have wished to distinguish between suits on wage claims and all other suits.

A different distinction, consistent with what the Chief Justice said, is suggested by a number of cases decided by the inferior federal courts since Westinghouse. A collective bargaining agreement is a complex of undertakings. The interest of the union in any given promise of the employer and the impact of any breach of that promise upon the union as an organization may be significantly different from the interest of and the impact upon the employees as individuals. Certain undertakings of the employer are important because of their direct and primary effect upon the union as an organization. Undertakings to maintain a union shop and to check off union dues are typical of this category. Breaches of such undertakings so primarily concern the union that it may meaningfully be said that the resulting claims are not "uniquely personal" to the employees. It is not surprising, therefore, that both before and after Westinghouse, inferior courts have allowed unions to sue on such claims under Section 301. Burlesque Artists Ass'n v. I. Hirst Enterprises, D.C.E.D. Pa.1955, 134 F.Supp. 203; Durkin v. John Hancock Mut. Life Ins. Co., D.C. S.D.N.Y.1950, 11 F.R.D. 147; United Steel Workers v. Shakespeare Co., D.C. W.D.Mich.1949, 84 F.Supp. 267.

Similar reasoning is applicable to another familiar type of union complaint under Section 301. Collective bargaining agreements usually include provisions which regulate the procedure to be followed by the employer and the union *inter sese* in the handling of grievances and the solving of various other labor problems which may arise in the future. Such regulations of the union-management relationship in the administration of the process of collective bargaining are obviously a special concern of the union as an organization and, in that sense, their enforcement is not a matter "uniquely personal" to the individual employees. True, the subject matter in dispute may or may not be primarily personal to employees. Any agreed grievance procedure may cover controversies ranging from wage disputes to questions of union recognition. But so long as the matter immediately in issue is an alleged obligation to arbitrate, or negotiate or follow some other procedure in administering the collective agreement the union is directly and primarily concerned. Indeed, adherence to prescribed procedures is the essence of systematic collective bargaining through union rep-

resentation as distinguished from unregulated individual dealings between employees and employers. In disputes over these procedural and administrative matters it is again not surprising that since the Westinghouse case the federal courts have continued to entertain union actions under Section 301. See, e. g., Independent Petroleum Workers v. Esso Standard Oil Co., 3 Cir., 1956, 235 F.2d 401; Local 205, United Electrical Workers v. General Electric Co., 1 Cir., 1956, 233 F.2d 85, certiorari granted 352 U.S. 822, 77 S.Ct. 63, 1 L.Ed.2d 46; Local 19, Warehouse Workers Union, CIO v. Buckeye Cotton Oil Co., 6 Cir., 1956, 236 F.2d 776, petition for certiorari filed, 25 U.S.L. Week 3123 (U.S. Oct. 18, 1956) (No. 515), 77 S.Ct. ——; Lincoln Mills of Alabama v. Textile Workers Union, CIO, 5 Cir., 1956, 230 F.2d 81, certiorari granted 352 U.S. 821, 77 S.Ct. 54, 1 L.Ed.2d 46.

This body of recent decisions distinguishing Westinghouse points to the likelihood that the language used by the Chief Justice was intended to draw a distinction which would serve to restrict jurisdiction under Section 301 to substantive matters which, whatever the personal interests involved, directly and primarily affect the complaining union as an organization, and procedural controversies about the proper administration of the collective bargaining process for which the union as bargaining agent is responsible. This view leaves suits to establish pension claims, like suits on wage claims, in the category of litigation "to enforce * * * uniquely personal right[s] of an employee", which the Chief Justice found to be outside of the intended scope of Section 301.[3] To us this is a plausible and satisfactory rationalization, and we adopt it.

Our conclusion is that five members of the present Supreme Court indicated views in the Westinghouse case which

lead to a like result in the present case. Therefore, the district court properly ruled that the complaint should be dismissed for want of jurisdiction.

The judgment will be affirmed.

---

3. For other examples of claims of a peculiarly personal nature which have been excluded from the federal forum since Westinghouse, see United Electrical Workers, Local 506 v. General Electric Co., 1956, 97 U.S.App.D.C. 306, 231 F.2d 259, certiorari denied 352 U.S. 872, 77 S.Ct. 95, 1 L.Ed. 2d 76; Burlesque Artists Ass'n v. I. Hirst Enterprises, D.C. E.D.Pa.1955, 134 F.Supp. 203.