**LOCAL NO. 90, STOVE MOUNTERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO, Plaintiff,**

v.

**WELBILT CORPORATION, a Michigan corporation, formerly known as Detroit-Michigan Stove Company, and AETNA LIFE INSURANCE COMPANY, a Connecticut corporation, Defendants.**

No. 18892.

United States District Court
E. D. Michigan, S. D.

Nov. 13, 1959.

Livingston & Keith, Detroit, Mich., for plaintiff, F. Jack Neller, Battle Creek, Mich., of counsel.

Charles Rubiner and Arthur James Rubiner, Detroit, Mich., for defendant Welbilt Corp.

Butzel, Eaman, Long, Gust & Kennedy, Detroit, Mich., for defendant Aetna Life Ins. Co.

FREEMAN, District Judge.

This is a motion to dismiss for lack of jurisdiction over the subject matter under Rule 12, F.R.Civ.P., 28 U.S.C.A. Jurisdiction is alleged under §§ 301 and 302 of the Labor Management Relations Act, 29 U.S.C.A. §§ 185 and 186.

The complaint, as amended, alleges that the plaintiff labor union entered into a contract with the Detroit Michigan Stove Company on behalf of employees at its plant in Battle Creek, Michigan, which, among other things, provided for a pension plan for such employees. The contract was to remain in effect for five years and contained an automatic annual renewal clause extending the contract in the absence of written notice of termination. The effective date of the contract was July 1, 1952. No termination notice was allegedly given by either party. Plaintiff further alleges that on July 1, 1952, the Detroit Michigan Stove Company entered into an annuity contract with defendant Aetna Life Insurance Company and that prior to 1954 some premium payments were made by the Detroit Michigan Stove Company and applied by Aetna to purchase annuities on behalf of employees covered by the pension plan; that the Detroit Michigan Stove Company ceased operations in its Battle Creek plant in 1954 and discharged its employees working therein; that in May 1955 the Detroit Michigan Stove Company merged or consolidated with the Welbilt Stove Company into the defendant Welbilt Corporation; that Welbilt assumed all obligations of the Detroit Michigan Stove Company under the pension plan; and that no payments have been made to Aetna Life Insurance Company by the Welbilt Corporation since 1954.

In essence, plaintiff asks that the provisions of the pension plan be specifically performed and that the defendant Welbilt be ordered to pay over to the defendant Aetna the premiums required to be paid under the pension plan.

In support of its motion to dismiss, defendant alleges that this court lacks jurisdiction over the subject matter because this action does not fall within the purview of §§ 301 and 302 of the Labor Management Relations Act and, more specifically, that this is a suit to enforce uniquely personal rights of employees and, therefore, does not come within § 301. In pertinent part, that section provides:

"(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce * * * may be brought in any district court of the United States having jurisdiction of the parties, without respect to the * * citizenship of the parties."

Since the plaintiff labor union alleges that the defendant employer has breached its obligation under a contract entered into by the parties, the present

case clearly falls within the literal language of § 301. In Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 348 U.S. 437, 75 S. Ct. 489, 500, 99 L.Ed. 510, however, the United States Supreme Court has limited the scope of § 301. The precise issue before the court on this motion is, therefore, whether the present case falls within such limitation.

In the Westinghouse case, the plaintiff labor organization brought suit under § 301 alleging that the defendant employer had violated the collective bargaining agreement by deducting from the pay of four thousand employees wages for a day when such employees were absent from work. Plaintiff asked for an interpretation of the contract and a declaration of rights of the parties and judgment against the defendant in favor of the employees for their unpaid wages. The majority of the court held that there was no jurisdiction under § 301. Justices Frankfurter, Minton and Burton decided that § 301 was not intended to constitute the jurisdictional basis in a suit by a union alleging an employer's failure to comply with terms of a collective bargaining agreement "relating to compensation, terms peculiar in the individual benefit which is their subject matter and which, when violated, give a cause of action to the individual employee." Chief Justice Warren, in a concurring opinion, joined by Justice Clark, concluded that Congress did not intend "to authorize a union to enforce in a federal court the uniquely personal right of an employee for whom it had bargained to receive compensation for services rendered his employer." Justice Reed also concurred, holding that the claim arose from a separate hiring contract, thus no contract between the union and employer was alleged.

It is the claim of defendant in the instant case that this action is one to enforce the uniquely personal rights of employees and that it therefore comes within the limitation of the Westinghouse case, thereby destroying jurisdiction under § 301.

Comparing the Westinghouse case to the action before the court, it is clear that there are significant factual differences. In the Westinghouse case, suit was brought to prevent the employer from deducting one day's wages from the pay of the employees. In the present case, the union is attempting to force the former employer to comply with the terms of a contract and to pay premiums into the pension fund established by that contract.

In order to bring the present action within the Westinghouse limitation, the defendant relies on several subsequent cases interpreting and applying that doctrine to other fact situations and places particular emphasis on the cases of United Steelworkers of America v. Pullman-Standard Car Mfg. Co., 3 Cir., 1957, 241 F.2d 547; Communications Workers of America, AFL–CIO v. Ohio Bell Telephone Co., 6 Cir., Mar.1959, 265 F.2d 221, and Local Lodge 2040, Intern. Ass'n of Machinists, A.F.L.–C.I.O. v. Servel, Inc., 7 Cir., June 1959, 268 F.2d 692.

The Pullman-Standard case involved a suit by a labor union and a disabled member against the employer for a declaratory judgment interpreting the collective bargaining agreement provision dealing with the pension plan under which the employer claimed to be entitled to reduce the pension benefits for disabled workmen by the amount of any statutory workmen's compensation award which may have been paid. Judge Hastie, speaking for the court, held that the suit involved "uniquely personal" rights not coming under § 301 as interpreted by Westinghouse and, after a careful analysis of the various opinions in the Westinghouse case, said (241 F.2d at page 550):

"The right of disabled Pullman employees to receive a pension without diminution on account of any workmen's compensation awards seems to us no less 'uniquely personal' than was the right of the Westinghouse employees to be paid for a day on which they did not work."

Judge Hastie then considered several cases decided subsequent to Westinghouse and, by way of dictum, stated:

"This body of recent decisions distinguishing Westinghouse points to the likelihood that the language used by the Chief Justice was intended to draw a distinction which would serve to restrict jurisdiction under Section 301 to substantive matters which, whatever the personal interests involved, directly and primarily affect the complaining union as an organization, and procedural controversies about the proper administration of the collective bargaining process for which the union as bargaining agent is responsible. This view leaves suits to establish pension claims, like suits on wage claims, in the category of litigation 'to enforce * * uniquely personal right[s] of an employee', which the Chief Justice found to be outside of the intended scope of Section 301. To us this is a plausible and satisfactory rationalization, and we adopt it."

Since the principal issue in the Pullman-Standard case was the extent of payments due to the employees under the pension plan, that case is also clearly distinguishable from the present case in which the issue is the payment of premiums by the employer into the pension fund rather than any payments due individual employees. In its brief, the defendant seems to place principal reliance on the dictum in the Pullman-Standard case, supra. If Judge Hastie means that only those cases involving the complaining union as an organization come within § 301 regardless of whether they involve uniquely personal rights or matters which give a cause of action to the individual employees, then this court must, with due respect to Judge Hastie's opinion, disagree.

The language of the various opinions in the Westinghouse case indicates that the Supreme Court intended to *remove* a specific category of cases *from* the jurisdiction under § 301, namely, those cases involving uniquely personal rights and involving a cause of action by the individual employees. The dictum in the Pullman-Standard case seems to shift emphasis by *restricting* § 301 jurisdiction *to* a certain category of cases. Since the categories delineated by the Supreme Court in the Westinghouse case and by Judge Hastie in the Pullman-Standard case are not the only categories in which an appropriate cause may be brought under § 301, it is clearly apparent that the dividing line set up by the dictum in the Pullman-Standard case does not coincide with that established by the Supreme Court in the Westinghouse decision.

In further support of its position, the defendant cites the Ohio Bell Telephone case decided in 1959 in this circuit. In that case, the employer adjusted the net credited service of striking employees by disallowing them credit for working seventeen days on which they were absent on strike, with respect to the company's noncontributing pension fund, vacation allowances, termination allowances and sickness and death benefits. Judge Weick (now Judge of the Court of Appeals, 6th Circuit) held these claims to be matters uniquely personal to the employees and decided that the court did not have jurisdiction under § 301. On page 826 of 160 F.Supp. Judge Weick expressly stated:

"The net credited service adjustments which affected the employees noncontributing pension fund, vacation allowances, termination allowances and sickness and death benefits fall within the same category as wages and are uniquely personal to the employees."

Even though Judge Weick in the course of his opinion cited the dictum from the Pullman-Standard decision supra, it is apparent that reliance on that dictum was not necessary to dispose of the case, since the claims involved items to which the employees believed themselves presently entitled and which, according to Judge Weick, fell within the same category as wages. The Circuit Court of

Appeals affirmed in a per curiam opinion adopting the opinion of Judge Weick in 6 Cir., 265 F.2d 221. Since the Ohio Bell Telephone Company case also is clearly distinguishable from the case at bar, it appears that the problem presented by the instant case has not been settled in this circuit.

From a consideration of pertinent cases decided in other circuits, it appears, with respect to the precise scope of § 301 jurisdiction, that the circuits are either in conflict or have not yet dealt with the issue now before the court. In International Ladies' Garment Workers' Union, AFL v. Jay-Ann Co., 5 Cir., 1956, 228 F.2d 632, for example, the labor union sought to compel the employer under a collective bargaining agreement to make contributions to a health and welfare fund. The court affirmed the dismissal of the action by the district court. In discussing the scope of § 301, the majority concluded that § 301 did not abolish the federal question requirement and that any suit brought under § 301 must involve a federal question besides satisfying the elements spelled out by § 301. Since the language of § 301 as well as the legislative history and the language in the Westinghouse case are completely devoid of any such suggestion, this court feels compelled to disagree with the position taken in the fifth circuit.

The Servel case, 7 Cir., June 1959, 268 F.2d 692, cited by the defendant in support of its position is also clearly distinguishable from the facts presented in the present case. In that case, the union brought suit for a mandatory injunction requiring the employer to allow its employees to exercise their rights to holiday pay and to their pension, insurance and seniority rights provided for in the collective bargaining agreement and asked for judgment in favor of the employees on their claims under the agreement. The court held that the suit involved the uniquely personal rights of employees and was therefore not within § 301. At page 696 of 268 F.2d the court said:

"Since, in the case at bar, appellants specifically plead in their complaint that the rights sought to be enforced for the employees 'were a part of the wages and compensation' paid to them for their work, we are unable to distinguish the instant case from the situation found in Westinghouse as it relates to the union plaintiffs, and we hold that it is controlling here."

The only two cases directly in point with respect to the facts and issues presented by the case at bar which have been brought to the attention of this court are Garfield Local 13–566 Oil, Chemical and Atomic Workers International Union, AFL–CIO v. Heyden Newport Chem. Corp., D.C.N.J.Apr.1959, 172 F.Supp. 230; and United Construction Workers, Division of Dist. 50, United Mine Workers of America v. Electro Chem. Engrav. Co., D.C.S.D.N.Y.July 1959, 175 F.Supp. 54. In the Garfield case, the court found that there was no jurisdiction under § 301, while in the Electro Chem. Engraving case jurisdiction under § 301 was upheld. This court notes that the Garfield case was decided in New Jersey and was therefore controlled by the Pullman-Standard decision in the third circuit. The controlling influence of the Pullman-Standard decision becomes evident from the language used by Judge Morrill in the Garfield case, who, after citing the dictum contained in Pullman-Standard, concludes on page 234 of 172 F.Supp.:

"It would seem, therefore, that I have no choice but to deny the motion for summary judgment on Count One and enter an order for dismissal for lack of jurisdiction insofar as Count One rests on § 301."

The Electro Chemical Engraving case, a New York decision, on the other hand, squarely holds that there is § 301 jurisdiction under circumstances as presented by the case at bar.

This court finds that the present suit for enforcement of the employer's alleged obligation to pay premiums into the pension fund is neither a suit for the

enforcement of "uniquely personal rights" nor a suit for enforcement of contract terms "relating to compensation, terms peculiar in the individual benefit which is their subject matter and which, when violated, give a cause of action to the individual employee," so as to come within the limitations set up by the Westinghouse case. This court is therefore inclined to adopt the rationale expressed by the New York court in the Electro Chemical Engraving case and holds that there is jurisdiction under § 301 in the present case.

Since the applicability of § 302 has not been urged by plaintiff either on oral argument or in its brief, and the court having decided that there is jurisdiction under § 301, it is, therefore, not necessary to consider § 302.

The motion to dismiss is denied. An appropriate order may be presented.