Chief Judge Desmond.
The Special Term order appealed from was made on petition of the State Superintendent of Insurance and authorizes and directs the Superintendent to take possession of the property and liquidate the affairs of and dissolve a trust fund known as “ United Construction Workers, United Mine Workers of America — S. H. Pomeroy Company Welfare Fund”. The Fund through its trustees opposed the application on the ground that article XVI of the State Insurance Law asserted by the Superintendent as authority for such a liquidation is, as applied here, inconsistent with and repugnant to section 302 (subd. [c], par. [5]) of the Federal Labor-Management Relations Act (U. S. Code, tit. 29, § 186, subd. [c], par. [5]) pursuant to which the Fund was established as a supplement to or part of a collective bargaining agreement made in 1957. The parties to that agreement were S. H, Pomeroy *442 Company as employer and United Construction Workers Division of District 50, United Mine Workers of America, acting on behalf of its Local Union 132, which was the bargaining agent for Pomeroy’s employees at the latter’s factory in New York City.
As required by the collective bargaining agreement the employer established the Fund to provide hospital and medical benefits for the employees and agreed for that purpose to pay to the Fund an amount equal to seven cents for each man hour worked. Administration was to be by a joint Welfare Committee of four members, two appointed by the company and two by the union. The committee was required to and did establish the Welfare Fund at a named bank in Washington, D. C., and to use the moneys solely for paying the premiums on policies of accident, hospitalization, medical expense and similar insurance for the benefit of Pomeroy’s approximately 65 employees and their dependents. Complying with article III-A of the New York Insurance Law enacted in 1956, the Fund filed with the State Insurance Department a ‘1 Registration Statement for Employee Welfare Funds ” and continued until 1960 to submit to the department the annual reports called for by article III-A. In July, 1959 a labor dispute at the Pomeroy plant caused a work stoppage after which the employer ceased operations and made no further payments into the Welfare Fund. In July, 1960 the Welfare Fund notified the State Insurance Department that the Pomeroy company had gone out of business but that the Welfare Fund would be continued in effect for the benefit of the employees by continuing the payment of insurance premiums until all the money in the Fund should be expended. The Insurance Department, however, took the position that it was its function and obligation to liquidate this Welfare Fund. The department so informed the Welfare Fund trustees, at the same time ordering them to desist from any further acts in respect thereto. The trustees (three of whom live in this State) insisted, however, that the Insurance Department had no right or duty as to such a liquidation. This litigation followed. The Welfare Committee has not been stayed from paying the accruing premiums and the Fund is being used up or has been used up. The question of law is, however, of some importance because of the number and size of such funds set up to benefit persons employed in this State. *443 The Special Term Justice, granting the department’s application, wrote an opinion in which he held that Congress had not in the Taft-Hartley Act (U. S. Code, tit. 29, § 186) pre-empted the whole field of legislation in regard to employee welfare funds and had shown no intent to displace local—and not inconsistent— insurance regulation laws. The Appellate Division unanimously and without opinion affirmed the Special Term order. The Fund, alleging the existence of a substantial Federal constitutional question, appealed to this court as of right (Civ. Prac. Act, § 588, subd. 1, par. [a]).
The parties agree that articles III-A and XVI of the State Insurance Law in terms subject such a Welfare Fund to regulation by the Insurance Department and empower the department to conduct any required liquidation thereof. The first question for our consideration is whether Congress, in legalizing these welfare funds and mandating their administration by trustees, etc., so fully occupied the field that customary statutes regulating the dissolution of insurance funds must give way. We think it clear that Congress did not intend to pre-empt this field. We must also consider the question as to whether article XVI of the Insurance Law as applied here is repugnant to section 302 (subd. [c], p.ar. [5]) of the Federal Labor-Management Relations Act (U. S. Code, tit. 29, § 186, subd. [c], par. [5]). There is no such inconsistency.
The Taft-Hartley Act not only authorizes and requires collective bargaining but authorizes the making of a welfare trust agreement as part of an employer-employee bargain (U. S. Code, tit. 29, § 158, subd. [d]). If in its statute dealing with welfare trusts Congress had taken jurisdiction over all aspects and incidents of such trusts and their administration and dissolution, there would be no place in the field for article XVI of our State Insurance Law since dissolution by the State Insurance Department would set up a conflict with national policy. But the Federal statute has no such coverage. As was correctly said in Moses v. Ammond (162 F. Supp. 866, 874): “To read into this statute, as plaintiffs urge, a broad bestowal of jurisdiction over all disputes relating to union welfare funds is not consonant with the architecture of the law or with its purpose. ’ ’ The ‘ ‘ architecture ’ ’ of the Federal statute is plain and symmetrical. Subdivisions (a) and (b) of section 186 of title 29 of the United States Code make it unlawful for an employer to offer or *444 deliver or for a labor union or official to take from the employer money or any other valuable thing. One of several exceptions to that prohibition is in paragraph (5) of subdivision (c) which allows the employer to contribute to employee welfare funds, provided there is conformity to certain stated rules. Such a fund to be lawful must be administered by trustees representing both employer and union and must be used for the benefit of the employees and their dependents only, including the purchasing of insurance. There are directions in the Federal act (U. S. Code, tit. 29, § 186, subd. [c], par. [5]) as to the appointment of an arbitrator, and recourse to a Federal District Court if the trustees cannot agree on matters of arbitration. All of this is by way of an exception to a prohibition (including penal sanctions) of payments by an employer to a union or union officer. Not only is there no provision in the Federal act concerning liquidation or dissolution of such a fund, or barring State regulation of such a fund, but there is another Federal act which in so many words permits a State such regulation as does not conflict with the federally imposed rules. That other statute is the Welfare and Pension Plans Disclosure Act of 1958 (U. S. Code, tit. 29, ch. 10, § 309). Subdivision (a) of section 309 says that: “ Nothing contained in this subsection shall be construed to prevent any State from obtaining such additional information relating to any such plan as it may desire, or from otherwise regulating such plan.” Subdivision (b) of section 309 adds a provision that the “ Disclosure ” law does not exempt anyone from any liability or duty provided by any law “ of any State affecting the operation or administration of employee welfare or pension benefit plans, or in any manner to authorize the operation or administration of any such plan contrary to any such law.” That is about as far away from Federal pre-emption as you can get. Clearly, the intent of Congress was to leave in the State a large measure of regulatory power over these insurance funds, an intent which is not surprising in the light of history. Insurance has been traditionally subjected to State police power control (O’Gorman & Young v. Hartford Ins. Co., 282 U. S. 251; California State Assn. v. Maloney, 341 U. S. 105, 109). New York’s statutes as to liquidation of insurance funds date back to 1909 (see Matter of Casualty Co. of America [Rubin Claim], 244 N. Y. 443).
*445 Appellant argues that reversal here is dictated by Teamsters Union v. Oliver (358 U. S. 283). The Oliver decision has no such effect. In that ease a collective bargaining agreement prescribed a wage scale for truck drivers of interstate carriers and prescribed that driver-owners of trucks should, besides the prescribed wage, be paid prescribed vehicle rental fees. A State court held that this latter was a violation of the Ohio antitrust laws as price-fixing, but the United States Supreme Court, reversing, held that, since the fixing of their charges was within the scope of collective bargaining required by Federal law, no State statute could be applied to prevent the carrying out of the collective bargaining agreement. In our case the State Insurance Department is doing nothing to prevent the “ carrying out ” of the Welfare Fund agreement but is exercising a power as to liquidation, a subject which no Federal act deals with.
The order should be affirmed, with costs.
Judges Dye, Fuld, Froessel, Van Voorhis, Burke and Foster concur.
Order affirmed. Motion for stay denied.