THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v. AUTOMOBILE TRANSPORTERS WELFARE FUND et al., Respondents.

First Department, December 20, 1962.

*Samuel A. Hirshowitz* of counsel (*Philip Kahaner* and *Gretchen W. Oberman* with him on the brief; *Louis J. Lefkowitz, Attorney-General*), for appellant.

*Charles R. Katz* of counsel (*David Previant* with him on the brief; *Katz & Wolchok,* attorneys), for respondents.

BREITEL, J. P. The issue in this appeal is whether the State may impose the cost of its examination on an interstate union-employer welfare fund organized and having its sole and principal office outside the State. Involved, apart from questions of lesser significance, are Federal statutes and the assertion by the fund of a pre-emptive effect, and State statutes with an assertion of explicit exemption.

Special Term, on cross motions for judgment on the pleadings under rule 112 of the Rules of Civil Practice, granted judgment

to defendants, that is, the welfare fund. It held that Congress, by virtue of the Federal statutes, had largely pre-empted the States from any regulation or examination of welfare funds in the labor-management field. Specifically, it held that the examination and the power to impose the cost of such examination on the welfare fund were not within the area saved to the States.

The order should be reversed and judgment on the pleadings should be granted in favor of plaintiff. Concededly, there are no issues of fact.

The fund describes itself as a multi-State, multi-employer fund covering 15,000 to 16,000 employees, employed in 24 States. It was created by a trust indenture in collective bargaining between employers and unions and its administration conforms to the requirements of Federal statute (U. S. Code, tit. 29, § 186). Its sole and principal office is in Detroit, Michigan. Approximately 400 to 500 or 3% of the covered employees are residents of New York. The fund is jointly maintained by employers and unions, and it provides health and welfare benefits for the employees.

The State of New York through its Insurance Department audits the books, records and affairs of the fund which, pursuant to State statute (Insurance Law, art. III-A, § 37 *et seq.*), is registered with the Superintendent of Insurance (*id.*, § 37-b). In this action the State seeks to recover the cost of such audit made in 1958, in the amount of $4,337.85. Bills were rendered for this sum, in part on November 18, 1958, and for the balance on March 10, 1959.

First, the fund asserts it is not subject to regulation by the State, and that, indeed, it is made expressly exempt by the State statute. To support this position, the fund points to section 466 of the Insurance Law. That section, it is true, exempts certain labor union organizations and operations from the application of the Insurance Law. However no one part of a statute is supreme over another, as a constitutional provision is when juxtaposed with a conflicting statute. It suffices that article III-A of the Insurance Law provides, elaborately, for supervision of welfare funds like defendant fund and for expenses of such examinations to be borne by the examined funds. Consequently, it is not necessary, although not difficult, to reconcile the provisions of section 466 with article III-A. In any event, the later-enacted and more specific statute would control. In short, the State legislation does not exempt from, but, on the contrary, includes welfare funds under State supervision.

Second, the fund argues that Federal statutes pre-empt the regulation of welfare funds, and, therefore, it is neither subject to State examination nor is it liable for the cost of such examination. In 1958, and later, by amendments in 1962, Congress enacted the Welfare and Pension Plans Disclosure Act (U. S. Code, tit. 29, § 301 *et seq.*). Under the act welfare plans must be published in prescribed form (§ 305); there must be summary annual financial reports (§ 306, subds. [a]–[d]); and there must be detailed reports on investments and " insider " loans (§ 306, subd. [f]). In addition to requiring reports and imposing penalties for violations, the statute, as amended in 1962 (Public Laws 87–420), empowers the Secretary of Labor to make investigations in connection with limited dispensations from the duty to report and to ascertain violations of the reporting requirements (§§ 304, 308). Because of these provisions the fund argues the State is pre-empted, as a matter of Congressional intention, from regulating welfare funds to the extent of audit and imposing the cost of such audit on the examined fund.

The fund never says that the State is wholly pre-empted, but argues that it is to the extent of covering any financial matter already required to be included in the Federal reports. So, the fund concedes that the States could still regulate the liquidation or dissolution of welfare funds, as was held in *Matter of Thacher* (10 N Y 2d 439); but that an audit and the imposition of the cost of an audit on the examined fund is another matter.

Congress was not silent in this statute on the area of possible pre-emption. Section 309 provides:

" § 309. Effect of other laws — State laws

" (a) In the case of an employee welfare or pension benefit plan providing benefits to employees employed in two or more States, no person shall be required by reason of any law of any such State to file with any State agency (other than an agency of the State in which such plan has its principal office) any information included within a description of the plan or an annual report published and filed pursuant to the provisions of this chapter if copies of such description of the plan and of such annual report are filed with the State agency, and if copies of such portion of the description of the plan and annual report, as may be required by the State agency, are distributed to participants and beneficiaries in accordance with the requirements of such State law with respect to scope of distribution. *Nothing contained in this subsection shall be construed to prevent any State from obtaining such additional information relating to any*

*such plan as it may desire, or from otherwise regulating such plan.*

"(b) The provisions of this chapter, except subsection (a) of this section, and any action taken thereunder, shall not be held to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of the United States *or of any·State affecting the operation or administration of employee welfare or pension benefit plans, or in any manner to authorize the operation or administration of any such plan contrary to any such law.*" (Emphasis supplied.)

The language would seem to be dispositive. The first subdivision, with limited qualifications, forbids the States to require duplication of the report-making required of welfare funds. All other State regulation is expressly preserved. Report-making is not the equivalent of inquiry into and regulation of the facts upon which the report is based. Under the 1962 amendments the Federal power of investigation is keyed exclusively to the making of reports and failures to make reports. True, a failure to make a proper report may, and more likely would, introduce inquiry into the facts upon which the report should have been made; but there is no correlative power to correct or control what is behind the report. Such correction or control would lie in the area of substantive regulation, rather than in the formal area of disclosure and report.

The second subdivision makes certain that the power of the States affecting the "operation or administration" of welfare plans, as distinguished from mere disclosure or report-making, is not impaired. The State statute provides internal controls on the operation and administration of welfare plans. Thus, section 37-l of the Insurance Law enumerates several categories of prohibited payments and expenses. In addition, various sanctions, penal and civil, are attached to several categories of misconduct. State audit of the welfare fund is a direct means of enforcing such regulatory requirements, which, unlike the Federal statute, are not confined to the making of reports or even of wholly complete or honest reports. Moreover, the 1962 amendments expressly excluded from the Secretary of Labor the power to regulate welfare funds. It was provided: "(h) Nothing contained in this Act shall be so construed or applied as to authorize the Secretary to regulate, or interfere in the management of any employee welfare or pension benefit plan, except that the Secretary may inquire into the existence and amount of investments, actuarial assumptions, or accounting practices only when it has been determined that investigation is required

in accordance with section 9(d) of this Act." (Public Laws 87–420, § 15; U. S. Code, tit. 29, § 308, as amd.)

Consequently, the very statute enacted by Congress precludes, rather than extends, pre-emption, by its express terms, except in the narrow field of report-making and disclosure of the character specified in the Federal statute. The legislative history, despite some ambivalent language in the committee reports, supports this construction; it shows awareness of State regulation, and intention not to interfere with such regulation and to confine the Federal statute to a disclosure function (see Senate and House Committee Reports, 1958 U. S. Code, Cong. and Adm. News, p. 4137 *et seq.*). Finally, in the statute, the findings and policy were expressed to accomplish merely " requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto " (§ 301, subd. [b]).

Both the State Court of Appeals and the United States Supreme Court have had occasion with this or closely related legislation to hold that there was no pre-emption.

Thus, in *Matter of Thacher* (10 N Y 2d 439, *supra*), referring to the Federal statute in this case and quoting the provisions saving the jurisdiction of the State, the Court of Appeals, per Chief Judge DESMOND, said (p. 444): " That is about as far away from Federal pre-emption as you can get. Clearly, the intent of Congress was to leave in the State a large measure of regulatory power over these insurance funds, an intent which is not surprising in the light of history. Insurance has been traditionally subjected to State police power control [citing cases]." In the *Thacher* case a welfare fund was involved. True, the holding related to its liquidation, but the rationale was broad enough to embrace a restatement of what is evident enough anyway in the language of the Federal statute.

The Supreme Court considered the Labor-Management Reporting and Disclosure Act in *De Veau* v. *Braisted* (363 U. S. 144) and its pre-emptive effect on State jurisdiction. That statute (U. S. Code, tit. 29, § 401 *et seq.*), also enacted in 1959, also contained express provision saving jurisdiction of the States (*id.*, § 523), and is closely related in purpose and spirit to the Federal statute in this case. Referring to and rejecting the proffered argument of pre-emption, Mr. Justice FRANKFURTER, on behalf of the court, said (p. 156): " Just the opposite conclusion is indicated by the 1959 Act, which reflects congressional awareness of the problems of pre-emption in the area of labor legislation, and which did not leave the solution of questions of pre-emption to inference. When Congress meant pre-emption

to flow from the 1959 Act it expressly so provided.'' These words are completely applicable to the Federal statute in this case.

Thus, whichever way one turns, it is evident that the Federal legislation is limited to disclosure and report-making and that the conscious and expressed purpose was not to displace State regulation of welfare funds.

Indeed, the concurrence of statutory language, legislative history, and the views of the highest courts of the State and the Nation, make strong and univocal argument for rejection of pre-emption; — a stronger one is difficult to conceive. Moreover, it is evident, too, that were displacement of State regulation to occur, there would be no existing machinery to regulate the operation and administration of welfare funds, the report-making object of the Federal legislation being extremely limited, by intention and design. It therefore follows that the State had the power to require audit examination of the fund and that no doctrine of Federal pre-emption precludes such examination or the regulation of which it is the significant instrument.

The fund argues that it is not engaged in the business of insurance and therefore is not subject to the broad regulation of insurance concededly reserved to the States. At best, this is a dispute over words. It should suffice that the fund operates an employee benefit plan coming flatly within the provisions of article III-A of the Insurance Law. Moreover, both the Federal and the State statutes involved describe employee welfare plans as providing insurance (U. S. Code, tit. 29, § 302; Insurance Law, § 37-a). Still further, *Matter of Thacher* (*supra*) referred to a welfare plan as insurance. Nor in this connection is the interstate character of the fund of special significance so long as it purports to provide benefits to a substantial number of residents of New York. The power of the State to protect its residents in dealings with interstate organizations in this area is hardly questionable (U. S. Code, tit. 15, §§ 1011, 1012; *Prudential Ins. Co.* v. *Benjamin,* 328 U. S. 408, especially 429–430; *Robertson* v. *California,* 328 U. S. 440, especially 459–460; *Federal Trade Comm.* v. *National Cas. Co.,* 357 U. S. 560, 563–565). Finally, whether welfare plans fit within the category of insurance is not essential to the determination because, in the very Federal statute discussed, the continued power of the State to regulate welfare plans is recognized expressly.

It is worthwhile, in passing, to indicate that the system of assessing the cost of examination by the Superintendent of Insurance on the subjects of examination is one of many years standing. Thus, under section 32 of the Insurance Law, a section

of long lineage, the examination cost of insurers is charged back to such insurers.

The fund also quarrels with article III-A of the Insurance Law, arguing that it is unreasonably discriminatory because its application is exclusively to bilateral funds (i.e., funds jointly maintained by employers and unions) and that unilateral (i.e., funds maintained only by employers) are exempted from its application. Certainly, the fact that there is no union or employee participation in unilateral funds may be a reasonable basis for distinction. The burden of disputing that distinction and showing unreasonable discrimination is on the one attacking the constitutionality of the statute (*Farrington* v. *Pinckney,* 1 N Y 2d 74, 78; McKinney's Cons. Laws of N. Y., Book, 1, Statutes, § 150). That showing has not been made.

In view of the determination it is not necessary to consider the other matters raised with regard to the right of the State to collect the cost of an examination made prior to the enactment of the Federal statutes.

Accordingly, the judgment and order granting judgment in favor of defendants should be reversed, on the law, with costs to plaintiff-appellant, plaintiff's motion for judgment on the pleadings should be granted, and defendants' cross motion for judgment on the pleadings should be denied.

Rabin, Stevens, Eager and Steuer, JJ., concur.

Judgment and order granting judgment in favor of defendants unanimously reversed, on the law, with costs to plaintiff-appellant, plaintiff's motion for judgment on the pleadings granted, with $10 costs and defendants' cross motion for judgment on the pleadings denied.