John J. O'ROURKE, as Trustee of Dairy Transportation Drivers, Helpers and Terminal Employees, Local 770, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Plaintiff,

v.

BREAKSTONE BROS. INC., Farm & City Trucking Corporation, Frank Hahn & Co. Inc., et al., Defendants,

Thomas Thacher, Superintendent of Insurance of the State of New York, Applicant for Intervention.

United States District Court
S. D. New York.
July 3, 1963.

Cohen & Weiss, New York City, for plaintiff.

Louis J. Lefkowitz, Atty. Gen., New York City, for superintendent of insurance.

RYAN, Chief Judge.

The Trustee of Local 770 has filed suit under Section 301 of the Labor Management Relations Act, 1947 (29 U.S.C.A. § 185) to compel defendant employers to account for contributions allegedly due the employee welfare fund and to pay over to plaintiff in trust such amounts as are found due, and to compel defendant Trustees to account for and pay over to plaintiff in trust all contributions received by them and all other funds on deposit with the Orange Trust Company in the name of the Fund, subject to the direction of the Court as to the manner in which they should be applied to effectuate the purposes of the Trust Fund.

The Local Union was dissolved and the plaintiff Trustee appointed by the parent union in 1961; the Fund, by the terms of the collective bargaining agreement of which it was part, came to an end on July 31, 1960 when the collective bargaining agreement terminated; the suit is to recover monies due while the Fund was in existence between 1957 and July 31, 1960. The Fund was wholly supported by employer contributions.

The Superintendent of Insurance of the State of New York as "applicant-intervenor" has moved to dismiss the complaint on the ground that the effect of the present action is one to liquidate and terminate the Fund—an action which, under New York statute, lies exclusively within the jurisdiction of the New York Supreme Court on application of the Superintendent of Insurance. The Superintendent of Insurance moved to intervene in this suit in order to make this motion and intervention was granted without opposition.

The following proceedings have been instituted in the New York Supreme Court for Albany County and are there now pending:

On December 7, 1961, the Dairy Transport Association, Inc., an association of employers who was their collective bargaining agent (and is a defendant here) instituted a suit (under Art. 79, N.Y. Civil Practice Act) against the Trustees of the Fund (also defendants here) to terminate the Trust Fund and obtain a return of the monies in the Fund contributed by the employers. On January 18, 1962 that Court entered an order terminating the Fund and directing the Trustees to wind up the Fund and account as prayed.

On January 26, 1962, the Trustee of the Local filed this suit in this Court (allegedly without knowledge of the pending State Court proceeding) and on March 24, 1962 the said Trustee moved in the State Court to vacate the order of January 1962 and to dismiss the employers' proceeding and to stay all proceedings pending determination of his motion. Finally, in January 1963, the

Superintendent of Insurance moved in the same State Court to dismiss all State Court proceedings on the ground that he alone has jurisdiction to liquidate employee welfare funds under the provisions of the New York Insurance Law, Arts. 3–A and XVI. The employer association, the plaintiff in the State suit, opposed that motion on the ground that the Superintendent does not have exclusive jurisdiction.

These motions of plaintiff employer association, of the Trustee and of the Superintendent of Insurance remain undetermined before Judge Staley of the New York Supreme Court, Albany County; briefs have been filed by the parties.

Plaintiff does not dispute the characterization of this suit as one to dissolve and liquidate an employee welfare fund within the meaning of Art. 3–A of the New York State Insurance law. He does, however, describe his suit also as one to assert a claim under Section 301 of the Labor Management Relations Act (29 U.S.C.A. § 185) to enforce such terms of the collective bargaining agreement as relate to the employees' pension trust fund. As we have seen, his prayer for relief is that he receive and distribute the funds as directed by the Court to effectuate the purposes of the Fund.

Initially plaintiff did not object to the dismissal of the suit here so long as it was conditioned (a) on a dismissal of the employers' State Court action; (b) on a direction that the Superintendent of Insurance promptly institute liquidation proceedings; and (c) on a direction that he promptly institute proceedings against those employers who allegedly failed to make payments into the Fund as required by the collective bargaining agreement.

Plaintiff has changed his position and by affidavit now suggests that this Court not dismiss but merely stay determination of this motion to dismiss, pending resolution by the State Supreme Court of Albany County of the Superintendent's

similar motion to dismiss the employers' action in that Court.

The basis of this alternative prayer is that there are undetermined questions of State law which this Court should refrain from passing on until the State Court has had an opportunity to do so.

Seven of the employer defendants have advised the Superintendent of Insurance and plaintiff's counsel and, through him, the Court, that, while they do not agree that the Superintendent of Insurance has exclusive jurisdiction, they do not oppose his motion to dismiss this suit because the merits of the Superintendent's position are before the New York Supreme Court.

The Superintendent of Insurance opposes the stay on the ground that the New York law is well settled and states that, upon dismissal of the instant suit, he will apply for an order of liquidation of the Fund in the Supreme Court, Orange County, Ninth Judicial District, where the funds in dispute are now on deposit in a bank.

■ The concurrent jurisdiction of the federal and state courts over suits to enforce the terms of the collective bargaining agreements between employers and unions is clear. Charles Dowd Box Co. v. Courtney, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483. Where one of the terms of the agreement provides for the establishment of an employee welfare fund, a suit against the employer to enforce the provisions of the Fund would literally come within the language of the statute as a suit for "violation of contract" (AFL v. W. U. Tel Co., 179 F.2d 535 (6th Cir.1950) [1] United Construction Workers UMWA v. Electro Chem. Engrav. Co., 175 F.Supp. 54 (S.D.N.Y. 1959); Local No. 90, etc. v. Welbilt Corp., 178 F.Supp. 408 (S.D.Mich., 1959))—unless the right sought to be enforced was so uniquely personal and private as to be outside the pale of a federal labor question. Association of Westinghouse Salaried Employees v.

[1]. This decision was before the Supreme Court restriction on Sec. 301 jurisdiction in Employees v. Westinghouse, infra.

Westinghouse Corp., 348 U.S. 437, 75 S. Ct. 488, 99 L.Ed. 510 (1955); International Ladies Garment Workers' Union v. Jay-Ann Co., 228 F.2d 632 (5th Cir., 1956); United Steelworkers of America v. Pullman Standard Car Mfg. Co., 241 F.2d 547 (3rd Cir., 1957); Garfield Local 13–566, etc. v. Heyden Newport (D.C.N. J.1959), 172 F.Supp. 230; Moses v. Ammond, 162 F.Supp. 866 (S.D.N.Y.1958); Copra v. Suro, 236 F.2d 107 (1 Cir., 1956).

It is not without significance that even in those cases where the Court decided in favor of extending federal jurisdiction to suits involving these funds, the underlying collective bargaining agreement was still in effect, there was a subsisting relationship of employer and employee, and the plaintiff union was acting as the representative of the employees in what might have conceivably developed into a labor dispute. Here, we have no such link with a labor dispute or labor contract; if the existing collective bargaining agreement be the underlying "labor contract" essential for invoking the jurisdiction of Section 301, as we think it must at the very least be, then its absence or termination cuts off any arguable coverage under Section 301; standing alone, a welfare and pension plan could hardly qualify as a "labor contract" for purposes of Section 301.[2]

We conclude that the relief sought here is the enforcement of peculiarly individual rights of the beneficiaries of the plan, a right which the New York State Court and Legislature are particularly and primarily concerned with protecting and one which "Congress did not intend to burden the federal courts." (Westinghouse case, supra, 348 U.S. p. 459, 75 S.Ct. p. 500.)

It is evident from an examination of the New York Insurance Law that the State can and has provided full and complete relief to the beneficiaries of these plans as it is evident from an examination of the Welfare Pension Plans Dis-

closure Act of 1959 (29 U.S.C.A. § 301 et seq., amended 1962) that the federal legislation has not.

Under Article 3–A of the New York Insurance Law enacted in 1956 "employee welfare funds" such as the one in suit were expressly brought under the supervision of the Superintendent of Insurance to the extent that like other insurance companies they must register, submit to audits and examinations at their expense, file annual statements and reports, with provision made for waiver of some of the requirements if similar reports are required by the law of any other state or the United States. For violation of any of these State laws, the Superintendent of Insurance may impose a penalty upon and remove any member of the Fund and, for conversion of funds, notify the Attorney General of the State of New York who, then, has the duty to file suit for the benefit of the Fund.

By virtue of Article XVI (Secs. 510–546), the Superintendent may apply to the Supreme Court for an order directing him to liquidate an insurance company which has commenced voluntary liquidation or dissolution of its affairs or procured the appointment of a Trustee (Sec. 511–j), such as plaintiff company here. The application must be made to the Supreme Court in the judicial district in which the insurer's principal place of business is located—here the Third Judicial District. Under the order of liquidation, the Superintendent is vested by operation of law "with the title to all of the property, contracts and rights of action" of the defunct company and the rights of all persons interested fixed (Sec. 514). This would certainly seem to clothe the Superintendent with power to enforce the provisions of the plan against those employers allegedly in default; but if he does not, plaintiff could prosecute such claim in the State court. The Supreme Court in the liquidation proceedings must take cognizance of the interests of the policyholders, creditors, stock-

2. The majority of these plans are not negotiated under the collective bargaining agreement; 1958 Cong. & Adm.News, pp. 4143, 4188.

holders and the public (Sec. 526) and may issue such orders as are necessary to prevent interference with the Superintendent or the proceeding (Sec. 528).

Chief Judge Conway of the New York Court of Appeals saw in the State statute a legislative plan to give "the Supreme Court, with the agency of the Superintendent of Insurance * * * exclusive jurisdiction of claims both for and against an insurance company in liquidation" and to "furnish a complete procedure for the protection of the rights of all parties interested" (citing Matter of Lawyers Title & Guar. Co., 254 A.D. 491, 492, 5 N.Y.S.2d 484; Knickerbocker Agency v. Holz, 4 N.Y.2d 245, 249, 250, 173 N.Y.S.2d 602, 606, 607, 149 N.E.2d 885, 889 (1958).) While the question of state versus federal jurisdiction was not present there, it was in the later case of Thacher v. United Construction Workers, etc., 10 N.Y.2d 439, 224 N.Y.S.2d 657, 180 N.E.2d 245 (1962) and the principle of the State's exclusive jurisdiction over the liquidation of these funds by virtue of State law was expressly reaffirmed there by Chief Judge Desmond. Recognizing that if Congress had assumed jurisdiction over all aspects and incidents of welfare trusts, Art. XVI of the New York Insurance Law might conflict with national policy, Chief Judge Desmond found that, while Congress had legalized these funds and mandated their administration, etc. (Title 29 U.S.C. §§ 158, 186(a, b), it had not occupied the field of dissolution or liquidation or regulation, but had left this to the State, specifically under Section 309 of the Welfare & Pension Plans Disclosure Act, 29 U.S.C.A. § 309(a) expressly reserves to the States the right to obtain information from the plans and to otherwise regulate them, while Section 309(b) provides that none of the provisions of the Act are to exempt anyone from any liability or duty provided by the law of the State "affecting the operation or administration of employee welfare or pension benefit plans, or in any manner to authorize the operation or administration of any such plan contrary to any such law."

In keeping with the purpose of the Act, the powers of the Secretary of Labor, the federal official in charge of administering it are restricted to enforcing the provisions of reporting and disclosure. He is the depository of the required reports but is expressly forbidden under Section 308(h) from regulating or interfering with the management of the plans, and he may not inquire into the investments, actuarial assumptions or accounting practices of the plans except in connection with an investigation of a violation of the reporting and disclosure provision. His power to issue regulations appears to be limited to the provisions dealing with reports, bonding, etc.; nowhere is any mention made of dissolution or liquidation of these Funds.

With Chief Judge Desmond, we agree that the language of this Act "is about as far away from Federal pre-emption as you can get." (Matter of Thacher, supra, 10 N.Y.2d p. 444, 224 N.Y.S.2d p. 660, 180 N.E.2d p. 247.)

The fact that jurisdiction there was invoked under Section 302 (the anti-bribery statute, United States v. Ryan, 350 U.S. 299, 76 S.Ct. 400, 100 L.Ed. 335) while here it is under the apparently broader Section 301, is of no significance in view of our conclusion that jurisdiction here rests exclusively in the State Courts. See also People v. Automobile Transporters Welfare Fund, 17 A.D.2d 448, 235 N.Y.S.2d 702 (AD 1st Dept. Dec.1962), and Sanders v. Birthright, 172 F.Supp. 895 (S.D.Ind., 1959).

The Congressional restraint apparent in the Act was deliberate and flowed from a recognition on the part of Congress of the necessity and desirability of leaving to the States regulatory and supervisory power over these funds as part of their police power. In fact, a Presidential Cabinet Committee was set up to work with a Committee of Governors to return to the States "those areas of government activity that are traditionally and properly the concern of the States. Regulation of banking and insurance certainly falls within the category of traditional State responsibility." (p. 4177) Studies

were made in an effort to accommodate State enactments to Federal legislation because of the recognition that the States are the primary legislators in the insurance field. 1958 U.S.Code Congr. & Adm. News, Vol. 3, pp. 4137–4168.

We conclude that this Court has no jurisdiction over this suit. Under New York statute as interpreted by its highest Court and therefore binding on us (Deveny v. Rheem Mfg. Co., 2d Cir., 319 F.2d 124), the New York State Supreme Court has exclusive jurisdiction.

Complaint dismissed with costs; the Clerk is directed to enter judgment accordingly, and it is so ordered.