LOCAL 495, UAW v DIECAST CORPORATION

1. LABOR RELATIONS—JURISDICTION—COURTS—NATIONAL LABOR RELA-
   TIONS BOARD—COLLECTIVE BARGAINING AGREEMENTS—BREACH
   —STATUTES.

   State and federal courts must defer to the jurisdiction of the
   National Labor Relations Board where an activity is arguably
   protected or prohibited by the National Labor Relations Act,
   except the Board's jurisdiction is not exclusive and does not
   displace the jurisdiction of the courts in suits for alleged
   breaches of collective bargaining contracts under the Labor
   Management Relations Act (29 USCA 158[a][5]; 29 USCA
   § 185).

2. LABOR RELATIONS—JURISDICTION—COURTS—NATIONAL LABOR RELA-
   TIONS BOARD—COLLECTIVE BARGAINING AGREEMENTS—UNFAIR
   LABOR PRACTICES.

   A trial court had subject matter jurisdiction to determine the
   issues raised in a plaintiff's complaint challenging the level of
   payment due under a profit sharing program in a collective
   bargaining agreement, and such jurisdiction was not preempted
   by the exclusive jurisdiction of the National Labor Relations
   Board over unfair labor practices, even though the defendants'
   alleged conduct, if proved, was concededly an unfair labor
   practice, where the task before the trial court was clearly a
   matter of contract interpretation and potential contract breach.

Appeal from Jackson, Charles J. Falahee, J.
Submitted Division 2 January 4, 1974, at Lansing.
(Docket No. 16206.) Decided March 28, 1974.

Complaint by Local 495, U.A.W. against Diecast
Corporation and Jackson Die Company an account-
ing and for examination of company records to
verify the companies' performance under a profit-

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 48 Am Jur 2d, Labor and Labor Relation §§ 425, 1108–1117,
1291–2397, 1311.

sharing plan. Accelerated judgment for defendants. Plaintiff appeals. Reversed and remanded.

*Rappleye, Bannasch & Wilkins* (by *William J. Addison),* for plaintiff.

*Miller, Johnson, Snell & Cumminskey* (by *Charles C. Hawk),* for defendants.

Before: LESINSKI, C. J., and HOLBROOK and BASHARA, JJ.

HOLBROOK, J. Defendant Diecast Corporation initiated a profit-sharing plan for its employees on October 1, 1961. Under the terms of the plan, Diecast Corporation was required to contribute a sum equal to 20% of the net profits of the company for each fiscal year in excess of 6% of the book value of the company at the beginning of the year. However, the contribution was not to exceed 15% of the compensation otherwise paid or accrued during that fiscal year to all participants in the program.

In 1965 Diecast Corporation and the plaintiff entered into a collective bargaining agreement. The agreement provided under article XIII, § 4:

"The profit-sharing program now in effect will be continued for the duration of this agreement. Employee distributions will be made by March 10 of each year. Certification by the corporate officer filing the federal tax return is conclusive. This program is not subject to the grievance procedure."

This provision has been in each collective bargaining agreement since 1965.

Diecast Corporation paid nothing under the profit sharing plan to plaintiff's members in 1970, allegedly because there were insufficient profits to

allow any contributions for profit sharing benefits. Diecast's failure to pay benefits in 1970 precipitated this suit. Plaintiff filed a complaint on June 23, 1971, against Diecast Corporation, and thereafter on September 1, 1971, filed an amended complaint which among other things added the defendant Jackson Die Company as a defendant. Pertinent portions of the original complaint and amended complaint containing plaintiff's allegations read as follows:

Original Complaint
"6. That in the year 1970, the defendant Diecast Corporation reported its profits to be so low that it was unable to participate in the profit sharing plan as set out above.

"7. That all records, vouchers and books of the business are kept by the officers of the defendant at its principal place of business and the plaintiff officers have not been permitted to see such documents for the purpose of examination of the said records. For this reason plaintiff has no means at its command to determine the amounts due the employees under this profit sharing plan with the defendant.

"8. That during the period that this profit sharing plan has been in operation the defendant, Diecast Corporation, has never accounted to plaintiff, as representative of the employees of Diecast Corporation, for the amounts paid under the profit sharing plan.

"9. That defendant should be required to account to plaintiff for such net profits received by the defendant. And in order that said accounting may properly be had, the defendant should be required to show the records of its net profits for the fiscal year of 1970."

Amended Complaint, Count I
"4. That defendant Diecast Corporation should be required to certify to plaintiff the book value of defendant Diecast Corporation at the beginning of each year from the inception of said profit sharing plan to and including January 1, 1971, which defendant Diecast Corporation has failed, refused and/or neglected to do.

"5. That defendant Diecast Corporation should be required to certify to plaintiff the net profit of defendant Diecast Corporation, as that term is defined under said profit sharing plan, for each year from the inception of said profit sharing plan to and including the net profits for the year 1971, which defendant Diecast Corporation has failed, refused and/or neglected to do.

"6. That defendant Diecast Corporation should be required to certify to plaintiff the total amount of defendant Diecast Corporation's contribution to said profit sharing plan for each year from the inception of said profit sharing plan to and including the year 1971, which defendant Diecast Corporation has failed, refused and/or neglected to do.

"7. That defendant Diecast Corporation should be required to certify to plaintiff the total number of full days worked by all employees participating in said profit sharing plan for each year from the inception of said profit sharing plan to and including the year 1971, which defendant Diecast Corporation has failed, refused and/or neglected to do.

"8. That defendant Diecast Corporation should be required to furnish to plaintiff the federal income tax returns of defendant Diecast Corporation for each year from the inception of said profit sharing plan to and including the year 1971 for verification of the amount of net profit of defendant Diecast Corporation for each year from the inception of said profit sharing plan to and including the year 1971, which defendant Diecast Corporation has failed, refused and/or neglected to do.

"9. That defendant Diecast Corporation should be required to provide to plaintiff records of defendant Diecast Corporation for verification of the book value of defendant Diecast Corporation at the beginning of each year from the inception of said profit sharing plan to and including the year 1971, which defendant Diecast Corporation has failed, refused and/or neglected to do.

"10. That defendant Diecast Corporation should be required to certify to plaintiff the total number of employees participating in said profit sharing plan for each year from the inception of said plan through and

including the year 1971, which defendant Diecast Corporation has failed, refused and/or neglected to do."

Amended Complaint, Count II

"9. Because of the fiduciary duty owed to the employees of Diecast Corporation, because of the fact that Jackson Die Company may derive all its revenue from Diecast Corporation and because of the fact that Diecast Corporation and Jackson Die Company are conducting their business as a single corporate · entity, instead of distinctive separate entities, defendants Diecast Corporation and Jackson Die Company should account to plaintiff for all revenues paid to Jackson Die Company for work performed by employees of Jackson Die Company, and should account to plaintiff for all receipts from Jackson Die Company for rent, utilities and other expenses of operating Jackson Die Company which would normally be paid by Jackson Die Company, but on information and belief are not so paid, and should furnish to plaintiff all records necessary to determine whether excessive amounts have been paid to Jackson Die Company."

On October 4, 1972, the defendants filed a motion for accelerated judgment, alleging that the circuit court lacked jurisdiction to hear the case. On December 27, 1972, the trial judge granted the defendants' motion on the grounds that the allegations in plaintiff's complaint, if proved, constituted an unfair labor practice under § 8(a)(5) of the National Labor Relations Act (hereafter NLRA), 29 USCA 158(a)(5), and was, therefore, solely within the jurisdiction of the National Labor Relations Board (hereafter NLRB), under the preemption rule announced in *San Diego Building Trades Council v Garmon,* 359 US 236; 79 S Ct 773; 3 L Ed 2d 775 (1959). Plaintiff now appeals, claiming the trial court erred in holding that it did not have subject matter jurisdiction to hear this case.

The jurisdictional rules in this area are fairly straightforward. *San Diego Building Trades, supra,*

held that when an activity is arguably protected or prohibited by § 7 or § 8 of the NLRA, the state and Federal courts must defer to the jurisdiction of the NLRB. An exception to this rule was carved out in *Smith v Evening News Association,* 371 US 195; 83 S Ct 267; 9 L Ed 2d 246 (1962), wherein the Supreme Court in interpreting § 301 of the Labor Management Relations Act (hereafter LMRA), 29 USCA 185, held that even if the conduct of an employer is concededly an unfair labor practice and within the jurisdiction of the NLRB, the Board's jurisdiction is not exclusive and does not displace the jurisdiction of the courts in suits for alleged breaches of collective bargaining contracts under § 301 of the LMRA. If the Federal courts have jurisdiction under § 301 of the LMRA, then the state courts may also have jurisdiction under their own laws. *Charles Dowd Box Co v Courtney,* 368 US 502; 82 S Ct 519; 7 L Ed 2d 483 (1962).

As aforesaid, the trial judge granted the motion for accelerated judgment on the ground that allegations in plaintiff's complaint, if proved, constituted an unfair labor practice under the NLRA, and was therefore solely within the jurisdiction of the NLRB per the *San Diego Building Trades* rule. We agree with the trial judge that defendants' alleged conduct, if proved, would constitute a bad faith refusal to bargain which is an unfair labor practice under the NLRA. However, this completes only one-half of the required analysis. For though defendants' alleged conduct, if proved, is concededly an unfair labor practice, the NLRB's jurisdiction over the conduct is not exclusive if the actions also amount to a breach of the collective bargaining agreement, per *Smith, supra,* and § 301 of the LMRA.

Our review of plaintiff's complaint forces us to

conclude that the trial court erred in granting defendants' motion for an accelerated judgment and in holding that he had no jurisdiction to determine the issues raised in plaintiff's complaint. First, the above quoted portions from plaintiff's complaint claim, albeit in an indirect way, that the "certification" required to be made by the corporate officer filing the Federal income tax return in accordance with the provision of the collective bargaining agreement quoted above required much more than was apparently done by the defendants here. Clearly, then, contract interpretation is the task laid before the trial court, a task within the trial court's jurisdiction under § 301 of the LMRA, 29 USCA 185. Two fairly recent Federal cases underline the validity of this conclusion. In *United Steelworkers of America, AFL-CIO v Rome Industries, Inc,* 437 F2d 881, 882–883 (CA 5, 1970), the Court held that:

"The District Court erred in concluding that it could not make the determination of whether a contract existed because it considered there were insufficient allegations of breach. In *El Paso Bldg & Constr Trades Council v El Paso Chapter Assoc Gen Contractors,* 376 F2d 797 (CA 5, 1967), we held it unnecessary to allege violation of the contract to secure a declaratory judgment of rights under the contract. In this instance the failure to allege a breach did not deprive the District Court of its power to determine whether the alleged contract existed."

The Court in *Bieski v Eastern Automobile Forwarding Co, Inc,* 396 F2d 32, 33–34 (CA 3, 1968) followed a path like that of the Court in *United Steelworkers* in ruling:

"The underlying controversy in this case concerns

certain seniority rights under a collectively-bargained labor agreement. There being substantial allegations that the seniority rights, *if any,* arise from such a contract and that recourse *may* lie for an alleged breach of the contract, the court has jurisdiction under § 301(a) of the Labor Management Relations Act of 1947, 29 USC § 185(a), authorizing District Court jurisdiction of suits for 'violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce'." (Emphasis supplied.)

In essence, then, if the substance of the complaint concerns contract interpretation and potential contract breach, the courts have jurisdiction to hear the case even though alleged conduct cited in the complaint may also amount to an unfair labor practice. Clearly, a suit challenging the level of payments due under a profit sharing program in a collective bargaining agreement comes within this jurisdictional rule. For supportive cases, see *Food & Service Trades Council v Retail Associates,* 115 F Supp 221 (ND Ohio, 1953) (suit over commissions allegedly due sales clerks under a bargaining agreement); *Chapman v Southeast Region ILGWU Health & Welfare Recreation Fund,* 265 F Supp 675 (D SC, 1967) (suit to recover vacation pay allegedly wrongfully diminished under a collective bargaining agreement); *O'Rourke v Breakstone Bros, Inc,* 218 F Supp 648 (SD NY, 1963) (suit by a trustee of a dissolved local union to compel defendant employers to account for contributions allegedly due employee welfare funds and to pay such amounts over).

Reversed and remanded for further proceedings. Costs to await the final outcome.

All concurred.